[L.A. No. 32333. Apr. 7, 1988.]

JOSEPH R. CARTER, JR., Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Joseph R. Carter, Jr., in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Ellen R. Peck and Diane Yu for Respondent.

## OPINION

**THE COURT:** * —This is a proceeding to review a recommendation by the State Bar Court that petitioner Joseph R. Carter, Jr., be suspended from the practice of law for one year, that execution of the order be stayed, and that petitioner be placed on probation for one year, with no actual suspension.

The recommended discipline is based on findings, made by the hearing referee and adopted by the review department, which essentially conclude that petitioner acted in a dilatory fashion in handling client matters. However, the findings are vague and conclusory, and overlook more serious acts of misconduct which were adequately charged and clearly established by the evidence (i.e., wilfully neglecting, not communicating with and abandoning a client; knowingly deceiving a client into believing that his case was awaiting a trial date; improperly withdrawing from employment; failing to return unearned fees; and failing to return client files).

In light of these serious acts of misconduct, petitioner's prior disciplinary record, and the absence of mitigating factors, we conclude that petitioner's conduct warrants probation for a period of two years, including six months' actual suspension.

### BACKGROUND

A. *Prior Disciplinary Record*

Petitioner was admitted to the practice of law in 1956. He has a prior record of discipline, consisting of public reproval in April 1986 for mishandling two different matters. In the first matter, petitioner was retained in 1979 to file a petition for guardianship of a minor child. He never filed the petition and, for over a year, failed to inform the client of this fact. The second matter was a marital dissolution and child support action which petitioner agreed to handle for another client in 1982. However, he ignored various decrees and orders, and thereby jeopardized the client's interests.

---

* Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Newsom (William A.), J.†

---

†Associate Justice, Court of Appeal, First Appellate District, Division One, assigned by the Chairperson of the Judicial Council.

The State Bar found that, in both cases, petitioner wilfully failed to inform the client of the status of the case, or to use the skill reasonably necessary to perform the services for which he had been employed.

### B. *The Notice to Show Cause*

The notice to show cause in the instant case (notice) charged petitioner with committing numerous acts of misconduct while representing Roy Vanderleelie in two separate matters—the "bad faith" and the "partition" actions.[1]

In the bad faith matter, the notice alleged as follows: In 1975, petitioner was retained by Vanderleelie to represent him in an action against an insurer who had refused to pay benefits under a medical policy. Vanderleelie gave petitioner a fee advance, and all pertinent documentation. Other than obtaining additional medical records, petitioner performed no services in the matter over the next seven and one-half years. During that time, he repeatedly failed to answer Vanderleelie's questions about the case, and intentionally misrepresented that a complaint had been filed and was awaiting a trial date. When Vanderleelie asked that his papers be returned in 1983, petitioner failed to comply.

By his actions in the bad faith case, petitioner allegedly committed the following acts of wilful misconduct: (1) failing to use the skill and diligence necessary to perform the services for which he had been hired (Rules Prof. Conduct, rule 6-101(A), former rule 6-101(2));[2] (2) repeatedly failing to communicate the status of the case to the client (*ibid*); (3) withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to the client (rule 2-111(A)(2)); (4) failing to return the client's papers (*ibid*); (5) failing to return unearned fees (rule 2-111(A)(3)); (6) committing acts of moral turpitude by intentionally deceiving the client (Bus. & Prof. Code, § 6106); and (7) violating the oaths and duties of an attorney (Bus. & Prof. Code, §§ 6067, 6068, 6103).[3]

---

[1] The notice also referred to a third matter which is not in dispute here. In that matter, Vanderleelie allegedly retained petitioner to file a personal injury action, which was never actually filed. The referee ultimately found petitioner free of any misconduct in this matter due to Vanderleelie's failure to provide petitioner with necessary information. Neither party now challenges this conclusion.

A review of the evidence discloses a direct conflict in the testimony as to whether Vanderleelie provided petitioner with the information he required to file suit. Since questions of credibility are best decided by the hearing panel (*Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 736 [187 Cal.Rptr. 30, 653 P.2d 321]), we see no reason to disturb the referee's decision to adopt petitioner's version of events.

[2] All further rule citations are to the Rules of Professional Conduct, unless otherwise indicated.

[3] Unfortunately, the notice does not match specific facts with the corresponding rule and statutory violations. The precise legal references are contained in a separate paragraph of the

In the partition matter, the notice alleged as follows: In 1982, petitioner was hired by Vanderleelie to represent him in a partition action involving real property jointly owned with a Ms. Littlefawn. Vanderleelie gave petitioner all pertinent papers and $850 in legal fees. Petitioner agreed to draft a settlement agreement reflecting Littlefawn's promise to transfer title to Vanderleelie in exchange for a release of liability by him. Petitioner ignored Vanderleelie's repeated requests for the agreement, and failed to return some of Vanderleelie's papers when requested to do so in March 1983.

By these actions, petitioner allegedly committed the following acts of wilful misconduct: (1) failing to use the skill and diligence necessary to perform the services for which he had been hired (rule 6-101(A), former rule 6-101(2)); (2) withdrawing from employment without taking reasonable steps to avoid prejudice to the client (rule 2-111(A)(2)); (3) failing to return the client's papers (*ibid*); (4) failing to return unearned fees (rule 2-111(A)(3)); and (5) violating the oaths and duties of an attorney (Bus. & Prof. Code, §§ 6067, 6068, 6103).

## C. *Findings*

The State Bar Court found that Vanderleelie was petitioner's client for purposes of all matters described in the notice. As to the bad faith action, it found that petitioner committed moral turpitude and violated his obligations as an attorney because he: (1) "failed to keep track of his own file and the status pertaining thereto;" and (2) "improperly advised his client on one or more occasions that he was awaiting a court date, thereby impl[ying] that suit had been filed when in fact it had not." The findings do not mention the particular rules or statutes violated by this conduct.

As to the partition action, the State Bar Court summarily concluded that petitioner "properly represented" and "communicated with" Vanderleelie. However, it also concluded that petitioner "fail[ed] to account for the monies received from" Vanderleelie. Although this "failure to account was a breach of [petitioner's] duty, it did not amount to serious misconduct." Once again, these findings are not linked to any particular rules or statutes.

notice, which is intended to cover the factual allegations in both the bad faith and the partition matters. Although this organization does not prevent us from linking the particular facts in this case with the relevant rules and statutes, it is troublesome. We recently observed that "carefully prepared disciplinary records are essential to fulfillment by the State Bar and this court of our responsibility to ensure that practicing attorneys are competent and morally qualified." (*Maltaman v. State Bar* (1987) 43 Cal.3d 924, 931-932 [239 Cal.Rptr. 687, 741 P.2d 185].) A vague record not only increases the workload of this court but, in cases less clear than this one, may raise doubts about the adequacy of notice to the attorney. (*Guzzetta v. State Bar* (1987) 43 Cal.3d 962, 968, fn. 1 [239 Cal.Rptr. 675, 741 P.2d 172].)

The State Bar Court went on to find that petitioner had a prior record of discipline, consisting of the 1986 public reproval. It apparently found no factors in mitigation, since none is mentioned in the decision. The sanction of one year's probation with no actual suspension was initially recommended by the referee and then adopted by the review department.

### SUFFICIENCY OF THE EVIDENCE

Petitioner argues that the findings are fatally flawed because they omit critical elements of the misconduct charged in the notice. To the extent the findings can be traced to specific charges, they purportedly are not supported by the evidence. Petitioner essentially recounts the testimony in great detail and asks us to credit his version of events over evidence to the contrary.

We begin by noting that the findings are indeed ambiguous. In the bad faith matter, petitioner's so-called "failure to keep track of the file and its status" could refer to three separate charges—lack of diligence in performing work on the case, failure to communicate progress to the client, and/or complete abandonment of the client coupled with failure to return his records. Absent a specific rule or statutory reference, the exact misconduct this finding is intended to describe is unclear. Moreover, there is no indication whether the State Bar Court concluded that such dilatory conduct was wilful or lacking in good faith—essential considerations under former rule 6-101(2). The State Bar Court also failed to conclude whether, by "improperly advising" the client that a complaint had been filed, petitioner made statements which were intentionally false.

No rules or statutes are likewise cited in the partition matter. While the State Bar Court found that petitioner failed to account for fees, it did not decide whether petitioner otherwise properly withdrew from the case and returned all of the client's records.

Despite these deficiencies in the State Bar Court's decision, our independent review of the record reveals that all but one of the charges (i.e., wilful failure to perform services diligently in the partition matter) are amply supported by the evidence. (*Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186].) Petitioner has failed to carry his burden of demonstrating, by convincing proof and to a reasonable certainty, that the contrary is true. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 12 [206 Cal.Rptr. 373, 686 P.2d 1177].)

A. *Evidence of Misconduct in the Bad Faith Matter*

■ This incident gives rise to the most serious charges against petitioner, all of which are supported by the evidence.

Vanderleelie's uncontroverted testimony indicates that petitioner failed to file a bad faith suit which he had been retained to handle in October 1975. During the initial consultation, petitioner reviewed various documents which Vanderleelie felt supported his claim that an insurer had wrongfully denied medical insurance benefits. Petitioner stated that Vanderleelie had a "good case," and agreed to take it on a contingency basis (33 percent of any pretrial settlement or 40 percent of any posttrial recovery). Petitioner accepted a $325 check from Vanderleelie, representing a $300 advance for legal services and a $25 filing fee. Petitioner asked Vanderleelie to sign a medical-records release form, which petitioner stated he would use in preparing the case.

Petitioner not only failed to file the suit, but led Vanderleelie to believe that the opposite was true. According to Vanderleelie, he began calling petitioner about the case a few months after the initial consultation. He thereafter inquired on a regular basis, calling every one or two months. On the few occasions that petitioner actually returned these calls, he consistently responded that the action was awaiting a trial date. In April 1983, after more than seven years of total inactivity on the case, Vanderleelie searched local courthouse records and discovered that no complaint had ever been filed. During the same time period, Vanderleelie also requested that petitioner return the file. Two more years passed before petitioner actually did so. However, he never refunded or accounted for the $325 in fees.

Petitioner conceded at the hearing below and in oral argument here that the foregoing chain of events was true. The only services he remembered performing on the case occurred within a month after the first meeting, when he used the medical authorization form to obtain some of Vanderleelie's records. Petitioner claimed that he had decided not to file suit because the records indicated that the claim lacked merit. However, he admitted failing to inform the client of this fact, and falsely telling him several times that the action was awaiting a trial date.

Petitioner could not recall the circumstances which caused him to make the admittedly false statements. He testified that he probably had forgotten what services had been performed on the case, and therefore simply assumed that it had been filed. He also admitted possessing the file for nearly 10 years, saying that it had been misplaced the entire time at home. Petitioner also insisted that he had earned the entire $325 in prepaid fees. However, he did not produce any time sheets to corroborate this claim, nor could he otherwise identify the specific services on which he based this conclusion.

Petitioner's behavior unquestionably amounts to wilful neglect, noncommunication and abandonment. By all accounts, Vanderleelie diligently

sought to keep abreast of his case. In the face of such persistency over such an extraordinarily long period of time, petitioner's failure to perform any services "involved a conscious disregard of the requirements of reasonable diligence and good judgment and cannot be said to have resulted from mere inadvertence or mistake." (*Arden* v. *State Bar* (1987) 43 Cal.3d 713, 726 [239 Cal.Rptr. 68, 739 P.2d 1236].) Having decided almost immediately that he did not intend to perform the service for which he had been hired, petitioner should have diligently communicated that fact, returned the files, and either refunded any unearned portion of the fee or accounted for its expenditure. (See, e.g., *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 612, 621-622 [238 Cal.Rptr. 377, 738 P.2d 723].) Instead, he actively hid the truth and compelled Vanderleelie to undergo the inconvenience of discovering it on his own.

The prolonged period of neglect also indicates that the misrepresentations were knowingly made. By his own admission, petitioner had no facts in his possession at the time the misstatements were made from which to conclude that a complaint had been filed. He also admitted that he continued to make the false assertions without ever once bothering to check their accuracy. Since this conceded conduct deviates so drastically from an attorney's obligation to serve the client in an honest, forthright matter, petitioner's half-hearted claim of negligence is patently unmeritorious. (See, e.g., *Kent* v. *State Bar* (1987) 43 Cal.3d 729, 735 [239 Cal.Rptr. 77, 739 P.2d 1244].)

In short, all of the charges arising out of the bad faith matter were adequately sustained at the hearing.

B. *Evidence of Misconduct in the Partition Matter*

Although the testimony reveals some dispute over events in the partition matter, all but one of the charges are supported by the evidence.

Vanderleelie testified that he formally retained petitioner in November 1982 to file a partition action against Ms. Littlefawn. Vanderleelie gave petitioner a check for $850, representing $750 in legal fees and $100 in filing fees. During the next three months, petitioner advised Vanderleelie against discussing the action with Littlefawn because it was "in litigation." It is undisputed that no complaint was ever actually filed.

Vanderleelie further testified that in February 1983, he told petitioner that Littlefawn had informally agreed to quitclaim her interest in the property if Vanderleelie would release her from the mortgage obligation. Petitioner purportedly agreed to draft a settlement agreement but failed to do

so. After unsuccessfully requesting petitioner to prepare the agreement, Vanderleelie retained another lawyer to do it for him. The following month, Vanderleelie sent a letter asking for the return of his files and a refund of the $850 in fees. Petitioner returned only some of the records and none of the fees.

Petitioner testified that he did not file the partition action because Vanderleelie said he had changed his mind and would rather settle the matter informally with Littlefawn. Petitioner also testified that he never offered to draft the settlement agreement, because he thought the parties' terms were legally unenforceable. Nonetheless, he admitted failing to account for the $850 in fees, even after Vanderleelie requested a refund.

The foregoing testimony reveals a dispute as to the precise services petitioner was obligated to perform. By concluding that petitioner "properly represented" Vanderleelie in this matter, the State Bar Court implicitly placed more credence in petitioner's version of events. Because we generally defer to the State Bar's determination on matters of credibility (*Dixon, supra,* 32 Cal.3d at p. 736), it cannot be said that petitioner's failure to perform services amounts to wilful neglect. According to petitioner, he would have filed the partition suit if Vanderleelie had not indicated a willingness to settle. Petitioner also cannot be faulted for failing to draft a settlement agreement, because he purportedly never offered to perform that particular service.

■ However, the remaining charges concerning improper withdrawal from employment—while not adequately discussed in the State Bar Court's decision—are amply supported by the evidence. Under petitioner's version of events, he had effectively withdrawn from the case in February 1983, when he declined Vanderleelie's request to draft the settlement agreement. However, he never notified Vanderleelie of his intent to withdraw. Instead, Vanderleelie was compelled to write a letter asking petitioner to return the files. Even then, petitioner ignored his client's request for a refund and never bothered to account for the $850 in prepaid fees. These omissions amount to misconduct warranting disciplinary action. (See, e.g., *Rosenthal, supra,* 43 Cal.3d at pp. 621-622.)

APPROPRIATE DISCIPLINE

While we generally accord great weight to the State Bar Court's recommendation, the ultimate disciplinary decision rests exclusively with this court. (*Warner* v. *State Bar* (1983) 34 Cal.3d 36, 43 [192 Cal.Rptr. 244, 664

P.2d 148].) We are particularly wary of the State Bar Court's lenient recommendation in this case, because it is based on an ambiguous set of findings. ■ Our independent inquiry into the true extent of petitioner's misconduct indicates that two years' probation, including six months' actual suspension, is reasonably necessary to deter petitioner from engaging in future misconduct. (See, e.g., *Guzzetta, supra,* 43 Cal.3d at p. 981.)

■ We begin with the general observation that client neglect is a serious form of misconduct which warrants substantial discipline. Indeed, where such disregard is "habitual" and is coupled with dishonesty or failure to communicate with the client, it constitutes moral turpitude and is grounds for disbarment. (See, e.g., *Kent, supra,* 43 Cal.3d at p. 735; *McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 85 [196 Cal.Rptr. 841, 672 P.2d 431].) In *Kent,* we ordered disbarment of an attorney who had caused significant harm by neglecting and deceiving two clients in a single matter. Through this conduct, and his misrepresentations and neglect in three prior disciplinary actions, petitioner had wronged a total of six clients. Disbarment was similarly ordered for the attorney in *McMorris,* who had failed to perform services and answer inquiries for five clients in seven separate matters. He previously had been suspended for at least four similar misdeeds, three of which also involved a failure to refund fees.

■ Viewed in tandem, petitioner's conduct in this matter and in his previous disciplinary action arguably does not rise to the level of "habitual" neglect. He has wronged a total of three clients in three matters—fewer than the number in *McMorris, supra,* 35 Cal.3d 77, and *Kent, supra,* 43 Cal.3d 729—and does not have as lengthy a formal disciplinary record as the attorneys in either of those cases. Nonetheless, he has displayed a cavalier disregard of his clients' interests which could easily recur in the future. Moreover, his abandonment of Vanderleelie in the bad faith matter was coupled with repeated acts of deceit. Such dishonesty is reprehensible and violates the attorney's highest duty of fidelity toward his client and the profession. (*Alkow* v. *State Bar* (1971) 3 Cal.3d 924, 935-936 [92 Cal.Rptr. 278, 479 P.2d 638].) Even where no concomitant habitual neglect is found, we have responded to an attorney's deceit by imposing substantial disciplinary measures. (See, e.g., *Maltaman, supra,* 43 Cal.3d at pp. 958-959 [five years' probation, with one year actual suspension, where an attorney with no prior disciplinary record committed dishonest acts in court and wilfully ignored court orders].)

Furthermore, petitioner evinces an "apparent lack of insight into the wrongfulness of his actions." (*Sodikoff* v. *State Bar* (1975) 14 Cal.3d 422,

432 [121 Cal.Rptr. 467, 535 P.2d 331].) His defense did not rest on a good faith belief that the charges were unfounded, but on a blanket refusal to acknowledge the wrongfulness of conceded conduct. (See *Alberton, supra,* 37 Cal.3d at p. 16.) Specifically, he claimed not to recall the circumstances surrounding many of his actions, and otherwise sought to justify them on the basis of a so-called "habit and custom" of properly representing his clients. Petitioner also has expressed no remorse for the difficulties his misconduct caused his client.

No mitigating circumstances are cited by the State Bar Court, and petitioner does not advance any here. He did describe certain personal and professional problems at the hearing, but they do not explain or excuse his misdeeds. For example, petitioner testified that he was busy at various times in 1976 and 1977 conducting depositions and 3 one-to-two-month-long trials. However, office workload and scheduling problems do not generally serve to substantially mitigate misconduct. (*McMorris, supra,* 29 Cal.3d at p. 99.) Petitioner also testified that heart problems disabled him in the summer of 1976, and that he recuperated from an auto accident for a few months at the end of that year. Yet, these short-lived health problems do not adequately explain petitioner's gross delay in the bad faith matter, or his improper withdrawal several years later in the partition matter. (See, e.g., *Kent, supra,* 43 Cal.3d at pp. 736-737.)

The foregoing factors—dishonesty, prolonged neglect, prior discipline, failure to appreciate the gravity of misconduct, and lack of mitigating factors—indicate that the State Bar Court's recommendation is inadequate. Rather, as suggested by the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V, eff. Jan. 1, 1986), a period of actual suspension is warranted to ensure that the public is protected from the reasonable likelihood of recurring harm. (Std. 2.3 [intentional dishonesty toward a client may result in actual suspension or disbarment, depending on the extent of harm to the victim, the magnitude of the misconduct, and the degree to which it relates to the attorney's law practice]; std. 1.7(a) [a single prior imposition of discipline warrants a greater disciplinary measure in the current proceeding].)

Accordingly, we order that petitioner be suspended from the practice of law for a period of two years; that execution of the order of suspension be stayed; and that petitioner be placed on probation for a period of two years on condition that he be actually suspended from the practice of law for the first six months and that he comply with all other conditions of probation recommended by the review department at its meeting on March 19, 1987.

In addition, we order that petitioner comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. We further order that petitioner take and pass the Professional Responsibility Examination within one year of the effective date of this order. (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) This order is effective upon finality of this decision.

Petitioner's application for a rehearing was denied May 18, 1988.