[No. S006864. May 15, 1989.]

RICHARD ROSS VAN SLOTEN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

922

**COUNSEL**

Richard Ross Van Sloten, in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Robert Deering for Respondent.

**OPINION**

**THE COURT.**—We review the unanimous recommendation of the Review Department of the State Bar (the department) that petitioner Richard Ross Van Sloten (Van Sloten) be suspended from the practice of law for two years, stayed on the condition that he be placed on probation for two years, for failing to perform the legal services for which he was retained.

By a notice to show cause dated November 20, 1985, Van Sloten was charged in one count with violating his oath and duties as an attorney, as established by Business and Professions Code sections 6068[1] and 6103,[2] and

[1]Section 6068 provides, inter alia: "It is the duty of an attorney:

". . . . . . . . . . . . . . . . . . . . .

"(b) To maintain the respect due to the courts of justice and judicial officers. . . .

". . . . . . . . . . . . . . . . . . . . .

"(d) To employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law. . . .

". . . . . . . . . . . . . . . . . . . . .

"(f) To abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is charged."

[2]Section 6103 provides in pertinent part that "any violation of the oath taken by [an attorney], or of his duties as such attorney, constitute[s] cause[ ] for disbarment or suspension."

of wilfully violating (former) rule 6-101[3] of the Rules of Professional Conduct of the State Bar. The charges arose out of a complaint filed by Marianne Tuchscherer, who hired Van Sloten to represent her in a dissolution proceeding.

Two days of hearings were held before a referee on July 24 and August 17, 1987. The referee found the following facts.

Van Sloten was admitted to the practice of law in California in June 1977 and has no prior record of discipline. In June 1982 Tuchscherer, an acquaintance of Van Sloten, consulted him about obtaining a divorce from her husband, Jean Wilhelm. Van Sloten did not prepare a written retainer agreement, but agreed to represent Tuchscherer for $400. She initially paid him $100 to cover the cost of the filing fee.

Between June and October 1982, Van Sloten attempted to obtain an uncontested dissolution by securing Wilhelm's cooperation. He filed a petition for dissolution on June 28, 1982, and served Wilhelm with the petition and a proposed marital settlement agreement on June 30, 1982. He subsequently contacted Wilhelm who told him that he would sign the agreement if Van Sloten changed the separation date in both the petition and the agreement from December 28, 1978, to March 28, 1982. He requested this change because, as a resident alien, he was concerned about his immigration status and believed the later date would not jeopardize his chances for obtaining citizenship. After consulting Tuchscherer, Van Sloten made the change and forwarded a new marital settlement agreement to Wilhelm on October 27, 1982.

After October 27, Van Sloten had no further contact with Wilhelm and did nothing more to obtain a dissolution. Even though it was apparent that Wilhelm would not sign and return the settlement agreement, Van Sloten did not attempt to obtain a default judgment, to undertake any other action on behalf of Tuchscherer, or to withdraw from the case. Instead, he simply informed Tuchscherer that unless Wilhelm cooperated he would take no further action to obtain a dissolution for her and she would have to obtain another attorney.

Tuchscherer repeatedly called Van Sloten between October 1982 and October 1983 in an effort to determine what was happening in her case. She

---

[3] Before its amendment in 1985, former rule 6-101 prescribed, inter alia, "A member of the State Bar shall not willfully or habitually

". . . . . . . . . . . . . . . .

"(z) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed."

called him two to three times a week, but he did not return her calls. Indeed, after October 1982 he spoke with her only once or twice by telephone and told her simply that he was waiting for Wilhelm to return the marital settlement agreement. In addition to her efforts to reach Van Sloten by telephone, Tuchscherer also sent him a letter inquiring about her case, but he did not respond. By October 1983 she became convinced that he would take no further action, and stopped trying to contact him. Although Van Sloten still had not taken any steps to withdraw from the case, Tuchscherer subsequently hired another attorney who obtained a dissolution judgment in 1985. She then filed a complaint with the State Bar.

At the hearing, Van Sloten maintained that he agreed to represent Tuchscherer only if Wilhelm cooperated and the dissolution could be obtained without a court appearance. He claimed he could not complete the dissolution because Wilhelm did not return the marital settlement agreement, and, indeed, the referee found that Wilhelm's failure to cooperate was one factor in mitigation of Van Sloten's conduct. Van Sloten also insisted that he repeatedly advised Tuchscherer to obtain another attorney.

The referee found that his actions demonstrated a consistent refusal to acknowledge his obligation to Tuchscherer, and was one factor in aggravation of his conduct. As a result of his failure to communicate with Tuchscherer, to obtain a default judgment, or to withdraw from the case, the referee concluded that Van Sloten was guilty of violating his oath as an attorney and of abandoning his client, and recommended that he be privately reproved.

The State Bar sought review of the referee's decision before the department, claiming that the recommended discipline was too lenient and requesting that the department increase the discipline to a public reproval. The State Bar hearing examiner informed Van Sloten that a hearing before the department would be held on April 7 or 8, 1987, and written notice of the April 8 hearing was mailed to him 13 calendar days before the hearing. Despite this notice, he did not appear when the matter came before the department and made no attempt to contact the hearing examiner or explain his absence.

The department adopted the referee's findings of fact and conclusions of law, but increased the discipline from a private reproval to two years' suspension, stayed on the condition that Van Sloten be placed on probation for two years and pass the Professional Responsibility Examination. The department recommended the increased discipline because it concluded that a period of monitored probation was needed to protect the public in light of

the fact that Van Sloten did not appear before the department and failed to accept responsibility for his misconduct.

In challenging the State Bar's determination, Van Sloten contends that several procedural errors denied him his right to a fair hearing, and that the department's findings are not supported by the evidence. Neither contention is meritorious.

■ Petitioner begins his attack on the proceedings by asserting that the rules and procedures of the State Bar violate the state and federal constitutional guaranties of due process. He claims that because the State Bar both promulgates the rules regulating the practice of law and selects the officials who conduct the disciplinary hearings, an attorney is unable to obtain a fair hearing.

We have previously rejected such broad challenges to the State Bar's authority. We have long recognized the regulatory ability of the State Bar, and have found that the procedural safeguards provided by the Rules of Procedure of the State Bar are adequate to insure that administrative due process will be observed. (*Schullman* v. *State Bar* (1973) 10 Cal.3d 526, 536-537 [111 Cal.Rptr. 161, 516 P.2d 865].) Absent a showing of specific prejudice, the mere fact that the State Bar promulgates these rules and selects the officials who conduct the disciplinary hearings does not demonstrate that the hearing officers are incapable of fairly evaluating the evidence or that the proceedings are inherently unfair. Because Van Sloten makes no specific showing that the referee or department officials who heard his case were biased, his contention must be rejected.

■ Petitioner further contends that the State Bar's notice to show cause was deficient and fails to support the charge for which he is being disciplined. He points out that the original notice to show cause alleged that he had not taken any steps to further Tuchscherer's dissolution since June 1982. He argues that because the facts disclosed before the referee demonstrate that he worked on the dissolution until October 1982, the State Bar had an obligation to amend the charge contained in the notice to conform to the evidence produced at the hearing. According to petitioner, the bar's failure to seek such an amendment renders the notice in this case fatally defective and these proceedings must be dismissed.

To be sure, the State Bar cannot impose discipline for any violation not alleged in the original notice to show cause. (*Gendron* v. *State Bar* (1983) 35 Cal.3d 409, 420 [197 Cal.Rptr. 590, 673 P.2d 260].) If the evidence produced before the hearing panel shows the attorney has committed an ethical violation that was not charged in the original notice, the State Bar must

amend the notice to conform to the evidence adduced at the hearing. Yet adequate notice requires only that the attorney be fairly apprised of the precise nature of the charges before the proceedings commence. (*In re Ruffalo* (1968) 390 U.S. 544, 551 [20 L.Ed.2d 117, 122, 88 S.Ct. 1222].) Unless the petitioner demonstrates that his defense was actually compromised, a slight variance in the evidence that relates to the noticed charge does not, in itself, deprive him of adequate notice. (See Rules Proc. of State Bar, rule 556.)

Here, the basis of the State Bar's recommendation for disciplining Van Sloten was his failure to perform the legal services for which he was employed. This charge was contained in the one-count notice to show cause. He makes no showing that the four-month variance in the dates specified in the notice to show cause and the referee's findings prejudiced his defense or prevented him from adequately responding to the charge. Consequently, it appears that any inconsistency in the notice and the findings did not limit his ability to prepare his defense.

█ Petitioner next contends that the State Bar hearing examiner committed "prosecutorial misconduct." He claims the examiner did not disclose the existence of a transcript of Tuchscherer's earlier testimony at the July 8, 1986, hearing, in which he did not participate. He maintains that Tuchscherer's testimony at that hearing included statements that were inconsistent with her testimony at the July 24, 1987, hearing, and that the hearing examiner failed to disclose the earlier transcript because he knew of these inconsistencies. Citing *In re Ferguson* (1971) 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234], a criminal case, Van Sloten argues that the examiner had a duty to provide him this transcript, even though he did not request it, because Tuchscherer's earlier testimony contained " 'substantial material evidence favorable to the accused.' " (*Id.* at p. 532.)

█ We have repeatedly declared that attorneys who are subject to disciplinary proceedings are not afforded all the procedural safeguards extended to criminal defendants. (*Fitzsimmons* v. *State Bar* (1983) 34 Cal.3d 327, 332 [193 Cal.Rptr. 896, 667 P.2d 700].) The question whether a particular rule of the civil or criminal law should be applied in disciplinary proceedings to assure fairness must be determined on the facts of each case. (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 226 [113 Cal.Rptr. 175, 520 P.2d 991].) We have not previously considered whether the hearing examiner has a duty to reveal potential impeachment evidence to the accused attorney.

We need not decide that issue in the present case. █ Van Sloten points to only one inconsistency between Tuchscherer's testimony at the July 8, 1986, hearing and the July 24, 1987, hearing—a discrepancy so

minor that even if he had been aware of it and raised the matter before the referee, it could not reasonably have affected the result in this case.[4]

Additionally, Van Sloten accuses the hearing examiner of misrepresenting the evidence to both the referee and the department. He claims, for example, that in oral argument before the department the examiner accused him of abandoning his client, of doing nothing to assist her after filing for dissolution, of failing to communicate with her after October 1982, and of not providing her with an explanation for his refusal to go forward with the case. He asserts these statements are "deliberate and complete falsehoods." While he is correct in noting that some of the examiner's representations to the department did not comport with the referee's findings, it does not appear that the department relied on these statements in adopting the referee's findings of fact or his conclusions of law, or that these findings and conclusions were otherwise based on any incorrect statements made by the examiner during his argument.

■ Petitioner also contends that the March 25, 1987, notice of the hearing before the department was untimely and prevented him from appearing at the oral argument. Before he received the written notice of the hearing, the examiner advised him that the department would consider his case on April 7 or 8, 1987. The written notice, mailed 13 days before the hearing, informed him that review was set for April 8, 1987. Believing that a party could not be required to reserve two dates for a hearing, Van Sloten maintains that he planned to attend the April 7 hearing, but scheduled personal duties for April 8. When he was informed the hearing was to proceed on April 8, he claims he was surprised and could not attend the hearing because of his previous commitments. However, he never formally objected to the April 8 hearing or otherwise contacted the State Bar to request a continuance. Instead, he did nothing, and now claims that the notice of hearing was defective and denied him due process.

The Rules of Procedure of the State Bar Court provide that after being informed of the hearing at least 30 days in advance, written notice of the specific time and place of the hearing shall be mailed to the member and examiner at least 10 days prior to the hearing. (Rules Proc. of State Bar, rule 451(a).) In this case petitioner was orally notified of the hearing, and subsequently received written notice 13 days before the hearing. He had the opportunity to appear in person or by counsel. Although continuances are disfavored, he had the opportunity to request a continuance. His failure to

---

[4] At the July 8, 1986, hearing Tuchscherer testified that the last time Van Sloten spoke to her about the dissolution on his own initiative was in September 1982, whereas at the July 24, 1987, hearing, she placed the date at October 1982. The referee found that the October date was correct.

appear, to request a continuance, or to communicate with the State Bar in any way constitutes a waiver of his claim of untimely notice. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 448 [113 Cal.Rptr. 602, 521 P.2d 858].)

■ In addition to these procedural challenges, Van Sloten also contends there is no convincing evidence he abandoned Tuchscherer. He maintains that all the evidence before the bar demonstrates that he agreed to represent Tuchscherer only if a dissolution judgment was entered without a court appearance, and that Wilhelm's failure to cooperate absolved him of any responsibility to go forward with the dissolution. He further contends that the bar's only witness, Tuchscherer, displayed a poor recollection of the relevant facts and repeatedly contradicted herself.

■ It is well established that the petitioner has the burden of showing that the findings of the referee and the department are not supported by substantial evidence. (*Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 736 [187 Cal.Rptr. 30, 653 P.2d 321].) Although we independently examine the record, we give great weight to the findings below, especially when they are based on conflicting testimony. (*Gallagher* v. *State Bar* (1981) 28 Cal.3d 832, 838 [171 Cal.Rptr. 325, 622 P.2d 421].) Those who heard the evidence are in a better position to observe the demeanor of the witnesses and the character of their testimony. (*Ibid.*) Consequently, merely repeating his version of the events, as Van Sloten does here, does not meet the burden of demonstrating that the referee's findings are erroneous. (*Gary* v. *State Bar* (1988) 44 Cal.3d 820, 826 [244 Cal.Rptr. 482, 749 P.2d 1336].)

Giving proper weight to the referee's resolution of conflicting testimony, we are of the view that the evidence before the referee was sufficient to support his finding that Van Sloten failed to use reasonable diligence in procuring the dissolution, did not withdraw from the case, and, with the possible exception of two phone calls, failed to communicate with Tuchscherer regarding the dissolution after October 1982. Indeed, Van Sloten admits that he did not go forward with the dissolution after October 1982 or withdraw from the case, yet seeks to justify his inaction on the basis of the parties' failure to cooperate. However, simply because the referee refused to accept an explanation for his inaction does not, as he contends, lead to the conclusion that there is no evidence to support the findings of fact and conclusions of law.

■ An attorney must use his best efforts to accomplish with reasonable speed the purpose for which he was employed. Failure to communicate with and inattention to the needs of a client are grounds for discipline. (*Butler* v. *State Bar* (1986) 42 Cal.3d 323, 328 [228 Cal.Rptr. 499, 721 P.2d 585].) Such a failure is a breach of the good faith and fiduciary duty owed by an

attorney to his clients. (*Gassman* v. *State Bar* (1976) 18 Cal.3d 125, 130 [132 Cal.Rptr. 675, 553 P.2d 1147].) Even if the petitioner's conduct did not, as he claims, involve deliberate wrongdoing, we have nonetheless held that inattention to the needs of a client is a proper ground for discipline, despite the fact that the attorney's conduct may not be deemed willful. (*Kapelus* v. *State Bar* (1987) 44 Cal.3d 179, 188 [242 Cal.Rptr. 196, 745 P.2d 917].)

■■■ While Van Sloten may thus be disciplined for failing to adequately perform the legal services for which he was retained, we question the department's proposed discipline. ■■■ Although the State Bar's recommendation as to discipline is entitled to great weight, in determining the appropriate punishment for professional conduct we must nevertheless exercise our independent judgment. (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82].) In imposing discipline we must consider the underlying conduct and review all relevant aggravating and mitigating circumstances. (*Warner* v. *State Bar* (1983) 34 Cal.3d 36, 43 [192 Cal.Rptr. 244, 664 P.2d 148].) We may, of course, adopt the department's determination as to misconduct and yet revise its recommendations regarding discipline. (*Price* v. *State Bar* (1982) 30 Cal.3d 537, 548 [179 Cal.Rptr. 914, 638 P.2d 1311].)

■■■ We agree with the department that a period of monitored probation is necessary to protect the public, the legal profession, and the courts. (*In re Nadrich* (1988) 44 Cal.3d 271, 276 [243 Cal.Rptr. 218, 747 P.2d 1146].) However, we conclude that in increasing the recommended discipline far beyond the public reproval originally requested by the State Bar hearing examiner, the department did not properly consider the underlying conduct.

The department concluded that Van Sloten's failure to accept responsibility for his misconduct was an aggravating factor. We do not agree. The department was correct in noting that an attorney's failure to accept responsibility for, or understand the wrongfulness of, his actions may be an aggravating factor. (*Carter* v. *State Bar* (1988) 44 Cal.3d 1091, 1100-1101 [245 Cal Rptr. 628, 751 P.2d 894], quoting *Sodikoff* v. *State Bar* (1975) 14 Cal.3d 422, 432 [121 Cal.Rptr. 467, 535 P.2d 331].) However, an attorney's lack of insight may not be used to increase the penalty if, as petitioner contends here, his attitude is based on an honest, although mistaken, belief in his innocence. (See, e.g., *Beery* v. *State Bar* (1987) 43 Cal.3d 802, 816 [239 Cal.Rptr. 121, 739 P.2d 1289]; *Calaway* v. *State Bar* (1986) 41 Cal.3d 743, 747 [225 Cal.Rptr. 267, 716 P.2d 371].) There is no reason to doubt the claim that Van Sloten's reaction to the charges leveled against him is based on an honest belief in his innocence. ■■■■■■ Thus, because

the State Bar must demonstrate the existence of aggravating circumstances by clear and convincing evidence (Rules Proc. of State Bar, div. V, Standards for Atty. Sanctions for Prof. Misconduct, std. 1.2(b)),[5] petitioner's failure to concede full responsibility for his misconduct is entitled to little weight as an aggravating factor.

Finally, the department noted that petitioner's failure to appear for oral argument before the department was a factor in aggravation. Van Sloten contends the department was not justified in recommending increased discipline on this basis, but in fact an attorney's attitude toward the disciplinary hearings of his profession may properly be considered when we decide on the appropriate sanction. (*Mepham* v. *State Bar* (1986) 42 Cal.3d 943, 949 [232 Cal.Rptr. 152, 728 P.2d 222].) Although an attorney is only obligated by law to appear at his hearing before the panel (see Bus. & Prof. Code, § 6111; Rules Proc. of State Bar, rule 555; *Hawk* v. *State Bar* (1988) 45 Cal.3d 589, 1597 [247 Cal.Rptr. 599, 754 P.2d 1096]), petitioner's unexplained failure to appear before the department in the context of an appeal by the bar examiner requesting increased discipline, demonstrates a lack of concern for the disciplinary process and a failure to appreciate the seriousness of the charges against him. (See *Yokozeki* v. *State Bar, supra,* 11 Cal.3d at p. 448.)

Nevertheless, a review of all the circumstances present here convinces us that the department was not justified in increasing the recommended discipline from a mere private reproval to two years' suspension, stayed on the condition of two years' probation. Moreover, the recommended discipline is more extreme than others we have imposed in similar cases in which an attorney is charged in one count with abandoning a client. (See, e.g., *Stuart* v. *State Bar* (1985) 40 Cal.3d 838 [221 Cal.Rptr. 557, 710 P.2d 357] [failing to communicate with client, losing file of client who lost opportunity to pursue case, prior record of discipline—one year's probation].) ▪ While past disciplinary practices are not binding on this court, they are nevertheless entitled to consideration. (*Beery* v. *State Bar, supra,* 43 Cal.3d at p. 816.)

▪ In light of the foregoing circumstances, the underlying misconduct—a single act of failing to perform the requested services without serious consequences to the client—does not merit a two-year period of suspension. Accordingly, we conclude that while it is clear that Van Sloten failed to perform the services for which he was retained, the recommended

---

[5] Because the referee's decision in this case was filed after January 1, 1986, this court may look to the Standards for Attorney Sanctions for Professional Misconduct as a guide in imposing discipline. Although these standards are not binding on us, we give them great weight. (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550-551 [237 Cal.Rptr. 168, 736 P.2d 754].)

discipline is excessive. Instead, we order that petitioner Richard Ross Van Sloten be suspended from the practice of law in the State of California for the period of six months, and that execution of the order of suspension be stayed on the condition that he be placed on probation for the period of one year, subject to the conditions set forth in the department's order of May 12, 1988. We further order that, during the period of his probation, petitioner shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

Petitioner's application for a rehearing was denied June 29, 1989, and the opinion was modified to read as printed above.