[Nos. S008466, S009913. Feb. 26, 1990.]

ALBERT M. BERNSTEIN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

224

**COUNSEL**

Thomas H. Carver for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Lawrence C. Yee, Dominique Snyder and Peter Eng for Respondent.

## OPINION

**THE COURT.** *—We examine the unanimous recommendation of the Review Department of the State Bar Court (department) concerning discipline of petitioner Albert M. Bernstein in two consolidated proceedings. In the first proceeding (No. S008466), the department recommended that petitioner be suspended from the practice of law for three years, stayed on conditions of probation, including actual suspension during the first year of probation and restitution with interest of unearned fees to his former clients. The department recommended the same discipline in the second proceeding (No. S009913), to run concurrently unless discipline is not imposed in No. S008466. In that instance, the department recommends a three-year suspension, stayed, with six months' actual suspension in No. S009913. After considering the record and petitioner's objections, we conclude, in light of petitioner's prior record of discipline, the presence of several aggravating factors, and the absence of mitigating factors, that the recommended discipline is insufficient to protect the public and the profession and that a longer period of suspension is warranted.

Petitioner was admitted to the practice of law in California on June 11, 1958. He was previously disciplined in 1972 for misappropriation of client funds.[1] In the current proceedings, petitioner is charged with willfully failing to (a) perform the services for which he was retained, (b) return client files and documents, and (c) refund unearned portions of fees. In No. S008466, the State Bar's notice to show cause involves two separate matters: the Wilson matter and the Burrell matter. A single matter, the Herrera matter, is the subject of No. S009913.[2]

Petitioner was a part-time instructor at a state college. In July 1984 one of his students, John Wilson, approached him after class regarding an appeal he was prosecuting in propria persona. According to Wilson's testimony, petitioner said he was highly sophisticated in appellate work and told Wilson to contact his secretary for an appointment. After meeting with Wilson and his wife, petitioner accepted the case. He told Wilson that he would prepare the opening appellate brief. Wilson paid petitioner $2,500, which Wilson borrowed from his sister. There was no written agreement.

---

*Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., Kennard, J., and Kaufman, J.†

†Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairperson of the Judicial Council.

[1] Petitioner was suspended from the practice of law on July 26, 1972, for a period of 30 days (L.A. No. 29839).

[2] In our discussion we supplement the department's findings with details evident from the record.

At the conclusion of the meeting, petitioner said that he was leaving town the next day and would be gone for about three weeks.

Petitioner testified that before leaving on his vacation, he left instructions to others in his office to work on Wilson's case. He claims that his daughter, a paralegal, organized the numerous papers Wilson had brought to the office. According to petitioner, when he returned from vacation an attorney in his office, William Bluestein, told him that another associate, Alan Goldberg, had read the file and done research; however, he could produce no time sheets or other records to support this claim.[3]

On August 25, 1984, Wilson sent petitioner a letter stating that, in response to two previous inquiries regarding his case, both petitioner and his secretary had been rude and insulting to him. He fired petitioner and demanded the immediate refund of the fee and return of his documents.

Petitioner failed to respond to the letter or refund the fee. Not until a State Bar investigator intervened did petitioner return Wilson's documents. Wilson then filed a complaint with the State Bar. Petitioner did not appear at the arbitration hearing, and Wilson was awarded $2,400, which the arbitrator found to be the unearned portion of the fee. Wilson's letter to petitioner demanding payment of the award went unanswered. Wilson then reduced the award to a judgment; nevertheless, petitioner has not refunded any portion of the fee. Wilson testified that because petitioner refused to refund the fee, he was unable to retain other counsel to prosecute his appeal.

In the Burrell matter, Nora Burrell, another of petitioner's students, hired petitioner to represent her and her husband in litigation involving the lease of an automobile. She paid petitioner an advance fee of $1,500 to represent them as plaintiffs in a superior court action. Petitioner failed to perform the service for which he was hired. The Burrells were also defendants in a municipal court action brought by the leasing company and arising out of the same factual situation as the superior court action. Mr. Burrell delivered the complaint to petitioner together with a check to cover the fee for filing an answer that petitioner said would be required. Petitioner never filed a response on the Burrells' behalf, and a default judgment was entered

---

[3] Petitioner moves to strike the portion of the State Bar's response brief that discusses Bluestein's record of discipline. The discussion is irrelevant to whether petitioner has engaged in misconduct, and we will therefore disregard it.

Petitioner also asks us to take judicial notice of two articles regarding State Bar discipline. He fails to explain how either article is relevant to this proceeding. The request is therefore denied.

against them. They repeatedly attempted to contact petitioner, but their telephone calls and letters went unanswered. Eventually, their bank accounts were levied on and their wages were garnished. In September 1987 Mr. Burrell wrote petitioner a letter demanding a refund of the fee and return of the files. To date, the Burrells have received no response to the letter, no refund and no explanation about their cases.

Petitioner testified that he gave the Burrell cases to his associate, Bluestein, to handle. When he asked Bluestein about the status of the cases, Bluestein responded, "don't worry" and "there's no problem." After default was entered, Bluestein again told petitioner that there was no problem and that he would move to set aside the judgment. Bluestein prepared a motion to set aside the judgment but, according to petitioner, because Bluestein was not in the office when the papers were prepared, petitioner signed the declaration and memorandum of points and authorities accompanying the motion. The motion was denied.

In the Herrera matter, Guillermo Herrera was referred to Bluestein to handle an immigration matter. Specifically, Herrera wished to obtain permanent residency cards for himself and his wife. According to Herrera's testimony, on February 17, 1984, he and his wife met with Bernstein and "another man," presumably Bluestein. Bernstein "did the talking." He accepted the case and said that he would obtain the residency cards for a fee of $3,000. He took copies of Herrera's license and his wife's identification card, and received Herrera's check for $200 as an initial payment on the fee. He told them that he would file the necessary papers and that the cards would be issued within a year. Petitioner gave Herrera a receipt. Several days later, Herrera received a letter from petitioner confirming the representation and fee arrangement, and assuring him that "We anticipate very little difficulty in obtaining the visas, assuming all the information you have supplied is correct."

On February 24, 1984, Herrera again met with petitioner and the other man who was present at the first meeting. He gave petitioner a check for $1,300 and petitioner told him that he would begin work on the case immediately. He again assured Herrera that the residency cards would be issued within a year. From March to August 1984, Herrera sent monthly payments to petitioner, making the total payment $2,500. He received no acknowledgment of the payments nor, despite his repeated attempts to contact petitioner, did he receive any report on the status of his case or indeed any communication from petitioner at all. When Herrera finally contacted petitioner by telephone in 1985, he told him to return his papers. Petitioner failed to honor the demand.

Herrera then retained a notary in Mexico who, within seven months, secured the permanent residency cards for him and his wife for a $700 fee. Herrera, both personally and through a friend, attempted to contact petitioner to demand a refund of unearned fees, but their telephone calls and a letter to petitioner went unanswered.

According to petitioner's testimony, Bluestein asked him to come into his office and introduced him to Herrera and his wife. Bluestein told petitioner about the case and petitioner told the Herreras the fee. He testified that he could not recollect meeting Herrera after the initial meeting or receiving any telephone messages from Herrera or his friend, but he noted that if he received a message regarding a case handled by Bluestein, he would simply give him the message. He did recall receiving a letter from Herrera demanding a refund and turning it over to Bluestein.

On July 16, 1987, the State Bar issued a one-count notice to show cause charging petitioner with failing to perform services and to return unearned fees in a matter unrelated to the Herrera matter.[4] No notice to show cause was issued in the Herrera matter, but on January 7, 1988, counsel for petitioner signed a stipulation to allow the Herrera matter to be consolidated for trial with the unrelated matter. Petitioner's counsel waived the right to receive a notice to show cause and to file an answer thereto. Hearings were held on May 12 and 13, 1988, on the charges, and on October 21, 1988, on the issue of discipline.

In No. S008466 (the Wilson and Burrell matters), the hearing panel (panel) determined that petitioner willfully failed to take substantial action and failed to exercise reasonable diligence to perform the services for which he was retained. On his discharge from employment, he failed to return the unearned portion of fees and failed to take affirmative action to return client files. It concluded that petitioner thereby violated Business and Professions Code sections 6068 and 6103, and Rules of Professional Conduct, rules 2-111(A)(2), 2-111(A)(3), and 6-101(A)(2).[5]

Following a hearing on the issue of discipline, the panel found that petitioner's testimony was not credible, that he did not cooperate with the State Bar, and that he filed motions to continue and to dismiss that were frivolous and were made solely to delay the hearing. It recommended "in the strongest possible terms" that petitioner be suspended for three years,

---

[4] The hearing panel concluded that the charges were not supported by clear and convincing evidence. The State Bar does not challenge that determination.

[5] New Rules of Professional Conduct became effective May 27, 1989. Unless otherwise indicated, all "rule" citations refer to the former Rules of Professional Conduct, effective January 1, 1975, as they were in effect at the times relevant herein.

and that execution be stayed on conditions of probation, including one year of actual suspension and restitution of fees to Wilson and the Burrells. By a 14-to-0 vote, the department adopted the panel's findings and recommendations, with a minor modification.

In No. S009913 (the Herrera matter), the panel determined that petitioner willfully failed to perform the services for which he was retained and failed to adequately supervise Bluestein. It also determined that on petitioner's discharge from employment, he failed to return Herrera's papers and to refund the unearned fee. The panel concluded that petitioner thereby violated Business and Professions Code sections 6068, subdivision (a), and 6103, and Rules of Professional Conduct, rules 2-111(A)(2) and 2-111(A)(3). It formulated the alternative recommendations on discipline described above. By a 15-to-0 vote, the department adopted the panel's findings and conclusions, with a minor modification.

■ We exercise our independent judgment in determining the appropriate discipline to be imposed. (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 549 [237 Cal.Rptr. 168, 736 P.2d 754].) Nevertheless, we give great weight to both the department's disciplinary recommendation (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the panel's factual findings (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]). Petitioner thus bears the burden of showing that the department's recommendation is erroneous or unlawful (Bus. & Prof. Code, § 6083, subd. (c); *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066]), or that its findings are not supported by the record (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 538-539 [213 Cal.Rptr. 236, 698 P.2d 139]).

Petitioner objects to the department's recommendation on the following grounds: the State Bar is without jurisdiction to impose discipline on one shareholder of a professional corporation for the acts of other members of the corporation; the complaining witnesses hired the corporation, not petitioner individually; none of the complaining witnesses suffered harm; the State Bar may not impose the sanction of restitution as a form of discipline; and federal and state due process guaranties are violated by the State Bar's procedures, including the alleged exclusion of minorities from the panel. The contentions are without merit.

■ Petitioner's primary contention is that the evidence shows that the Burrells, Wilson and Herrera hired the corporation "Bernstein & Bluestein" as their attorney, not petitioner as an individual. We rejected a similar contention in *Farnham* v. *State Bar* (1976) 17 Cal.3d 605 [131 Cal.Rptr. 661, 552 P.2d 445]. In that case, a client, Graham, consulted the

Legal Aid Warranty Fund to represent him in a lawsuit. When Graham complained that he was unable to contact the attorney originally assigned his case, Farnham took the file to review, met with him twice, and told him that he would handle the case and file the complaint. The complaint was never filed.

Farnham maintained that he did not feel responsible for the Graham matter as he was merely an employee of the Legal Aid Warranty Fund and had never told Graham he was going to try the case. We rejected Farnham's contention that "there was no evidence that he even formed an attorney-client relationship with . . . Graham . . . , and therefore, he [did not] abandon [Graham's] interests." (*Farnham* v. *State Bar, supra,* 17 Cal.3d. at p. 612.) We explained, "There is no question that petitioner formed an attorney-client relationship with . . . Graham. No formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client. It is the fact of the relationship which is important. [Citations.] . . . [P]etitioner specifically told Howard Graham that he would accept his case and had Graham sign a firm retainer agreement, on the bottom of which he signed 'accepted by Gordon Farnham.'" (*Ibid.*)

Similarly, in this case there is no question that petitioner formed an attorney-client relationship with the Burrells, Wilson and Herrera. The Burrells and Wilson repeatedly testified that they retained *petitioner* to represent them. Their initial contact at the college was with petitioner. He directed them to call his secretary to make an appointment with him. He met with them, discussed their cases, accepted employment, explained the fees and accepted their money. Wilson testified that petitioner told him that *he* would file the opening brief. Wilson had no contact at all with either Bluestein or Goldberg. Similarly, the Burrells dealt almost exclusively with petitioner.[6] They directed their telephone calls and letters to him, and Mr. Burrell delivered the municipal court complaint and the check to file an answer to petitioner. At the two meetings with Herrera, it was petitioner who "did the talking," who opined that he would obtain the cards within a year, who received the $200 check, and who sent Herrera the follow-up letter, which not only confirmed the employment and fee agreement but also expressed a legal opinion. In turn, Herrera directed all his telephone calls and his letter to petitioner.

Despite this overwhelming testimony, petitioner argues that as to the Wilson matter it is doubtful *any* agreement was ever reached on the performance of legal services either by himself or by the corporation. He disingen-

---

[6] Bluestein briefly appeared in Bernstein's office during the Burrells' meeting with petitioner.

uously relies on a single sentence from Wilson's testimony in which he said, "I didn't retain [petitioner]." When the statement is read in context, it is clear that Wilson simply meant that petitioner was not the attorney *of record* because Wilson filed his notice of appeal in propria persona and no substitution of attorney was ever filed. Obviously an attorney-client relationship must be formed prior to the filing of the form substituting an attorney in place of his client who was formerly in propria persona. The mere fact that the substitution had not been filed, especially when the attorney was discharged after only one month, does not preclude the finding of an attorney-client relationship.[7]

Petitioner maintains that the Burrells engaged the services of the corporation and not his individual services. He relies on the written attorney-client agreement, which refers to the attorney as "Bernstein & Bluestein," and the Burrells' check, which was made payable to the corporation. He points to testimony of his secretaries who said that, generally, Bluestein drafted the pleadings and motions while Bernstein performed trial work. This evidence is beside the point. Even if the preponderance of evidence supported petitioner's position, which it clearly does not, he cannot rely on the corporate veil to cloak his own professional lapses. Wilson, Herrera and the Burrells dealt directly with petitioner and reasonably expected him to perform the services for which they paid.

This is not to say that petitioner was required to do all the research and prepare every pleading and motion. (See *Estate of Withenbury* (1922) 188 Cal. 109, 112 [204 P. 385].) Nevertheless, "an attorney who accepts employment necessarily accepts the responsibilities of his trust." (*Moore* v. *State Bar* (1964) 62 Cal.2d 74, 81 [41 Cal.Rptr. 161, 396 P.2d 577].) The evidence amply supports the panel's finding that petitioner was well aware Bluestein was in ill health, had difficulty organizing and completing his work, was actively involved in nonlegal activities to the detriment of his duties as an attorney, and was not properly supervising his files. Petitioner thus fails to carry his burden of showing that the department's findings are not supported by the record.

■ Petitioner next contends that neither Wilson nor the Burrells suffered harm as a result of his actions. Parenthetically, we note that professional misconduct is not excused merely because the former client has suffered no harm. (*Athearn* v. *State Bar* (1977) 20 Cal.3d 232, 236 [142 Cal.Rptr. 171, 571 P.2d 628]; *Sodikoff* v. *State Bar* (1975) 14 Cal.3d 422, 431 [121 Cal.Rptr. 467, 535 P.2d 331].) Lack of harm to the former client

---

[7] Petitioner also maintains that Wilson never paid the balance purportedly owed on the retainer, and that he knew petitioner would be on vacation for three weeks. He fails to explain how either circumstance bears on the attorney-client relationship issue.

may, however, be considered a mitigating circumstance in determining appropriate discipline if clearly and convincingly supported by the record. (Std. 1.2(e)(iii), Stds. for Atty. Sanctions for Prof. Misconduct (Rules Proc. of State Bar, div. V); all further references to standards are to this source.) It is clear in this case that both Wilson and the Burrells suffered harm. Wilson was unable to prosecute his appeal because petitioner refused to refund his fee. The Burrells lost their cause of action in the superior court action; they suffered a default judgment in the municipal court action, which resulted in their bank accounts being levied on and their wages being garnished.

Petitioner testified that neither he nor Bluestein believed the Burrells' case "would hold water." Petitioner violated his duty as an attorney by failing to communicate this opinion to his clients, to refund the unearned portion of their fees, and to return their files. (See *Carter* v. *State Bar* (1988) 44 Cal.3d 1091, 1098 [245 Cal.Rptr. 628, 751 P.2d 894].) Petitioner's argument that Wilson was not harmed because he did not even attempt to retain another attorney to prosecute his appeal is patently frivolous and one of many examples of petitioner's attempts to shunt the responsibility for his misconduct onto others, including the very victims of that misconduct.

■ In the Herrera matter, petitioner contends that because the proceeding in the State Bar Court was conducted without pleadings or definition of issues, the department's decision is void as an act in excess of jurisdiction. Yet he concedes, as he must, that his trial counsel signed a stipulation waiving his right to receive a notice to show cause and to file an answer. He fails to explain why he should not now be bound by the stipulation's terms. Moreover, the record reflects that petitioner was fully aware of the charges against him in the Herrera matter and was in no way prejudiced by the lack of a notice to show cause in that matter.

■ Without citing any authority, petitioner next contends that the State Bar is not authorized to recommend restitution of unearned attorneys' fees as a form of discipline. To the contrary, we have ourselves added the requirement of restitution to an attorney's discipline to protect the public and maintain high standards of professional conduct (*Bate* v. *State Bar* (1983) 34 Cal.3d 920, 924-925 [196 Cal.Rptr. 209, 671 P.2d 360]), and have consistently recognized and approved the State Bar's recommendation of such discipline. (See *Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 685 [244 Cal.Rptr. 462, 749 P.2d 1317], and cases there cited.)

■ Finally, petitioner contends the State Bar's procedures violate due process guaranties because the notice to show cause is not based on objective standards, and because the panel referees are not representative of the

population of California or the members of the State Bar. Contrary to petitioner's assertion, the notice to show cause does not allege simple "negligence" or "malpractice." Instead, the notice contains a clear and concise statement of the alleged misconduct and specifically identifies the particular statutes and rules allegedly violated. Petitioner fails to specify any of the procedural rules that he claims deny him due process. Moreover, he cites no authority for the proposition that a panel must consist of referees representative of a cross-section of the population of California or the members of the State Bar. His "citations to criminal cases and attempted invocation of a 'quasi-criminal' talisman" do not support his due process claims. (*Rosenthal v. State Bar* (1987) 43 Cal.3d 612, 634 [238 Cal.Rptr. 377, 738 P.2d 723]; *Bernstein v. State Bar* (1972) 6 Cal.3d 909, 916 [101 Cal.Rptr. 369, 495 P.2d 1289].)

■ We now turn to the issue of discipline. An attorney's inattention to the needs of clients, and failure to communicate with clients and to perform the legal services for which clients have paid, are grounds for discipline. (*Van Sloten v. State Bar* (1989) 48 Cal.3d 921, 932 [258 Cal.Rptr. 235, 771 P.2d 1323]; *McMorris v. State Bar* (1981) 29 Cal.3d 96, 99 [171 Cal.Rptr. 829, 623 P.2d 781].) According to the Standards for Attorney Sanctions for Professional Misconduct, the appropriate discipline of an attorney who willfully fails to communicate with clients or to perform the services for which he was retained in matters not demonstrating a pattern of misconduct is "reproval or suspension depending upon the extent of the misconduct and the degree of harm to the client." (Std. 2.4(b).) Because petitioner has a record of prior discipline, the degree of discipline imposed in this proceeding should exceed the degree of discipline previously imposed, in this instance, 30 days' actual suspension. (See *ante,* fn. 1.)

Petitioner's clients were indeed harmed by his misconduct. Wilson was unable to prosecute his appeal because petitioner refused to refund his fee. The Burrells lost their cause of action and suffered a default judgment which resulted in their bank accounts being levied on and their wages being garnished. The Herreras experienced delay in obtaining their permanent residency cards and paid petitioner $2,500 for services that were never rendered.

In No. S008466 (the Wilson and Burrell matters), the panel found that letters written on petitioner's behalf revealed petitioner's lack of candor, apparently because petitioner neglected to inform the writers of the disciplinary charges pending against him. In No. S009913 (the Herrera matter), petitioner presented no evidence in mitigation. Nevertheless, the panel stated, "Although [petitioner] may not escape culpability, Bluestein's conduct is certainly a mitigating factor." We disagree. That an attorney's associate is

primarily responsible for a client's abandonment is not a recognized factor in mitigation, and it is wholly at odds with the well-supported finding that petitioner's failure to supervise Bluestein was willful.

Moreover, the record reveals a number of aggravating circumstances: petitioner suffered prior discipline (std. 1.2(b)(i)); he has demonstrated indifference to rectification of or atonement for the consequences of his misconduct (std. 1.2(b)(v)); he has failed to make restitution to the Burrells or Herrera, or to Wilson, who reduced to judgment the arbitration award against petitioner (std. 1.2(b)(v), (vi)); and he has failed to show remorse or accept any responsibility for his misconduct and instead consistently shunts responsibility for his misconduct onto others. Finally, as noted above, in No. S008466 (the Wilson and Burrell matters) the panel found that petitioner displayed a lack of candor with authors of letters and declarations presented in his support at the disciplinary stage of the hearings. (Std. 1.2(b)(vi).)

In light of the lack of mitigating circumstances and the presence of several aggravating circumstances, the recommended discipline of the State Bar is inadequate. We conclude that a longer period of probation and actual suspension is necessary to protect the public, the courts and the profession.

It is hereby ordered that petitioner Albert M. Bernstein be suspended from the practice of law in this state for a period of five years, that execution of the order of suspension be stayed, and that petitioner be placed on probation for a period of five years on condition that he be actually suspended from the practice of law for two years and until he makes restitution and complies with all other conditions of probation recommended by the department, as set forth in its decisions filed August 2, 1988, and March 14, 1989. It further ordered that petitioner take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners during the period of his actual suspension from the practice of law. It is also ordered that petitioner comply with the provisions of paragraph (a) of rule 955 of the California Rules of Court within 30 days of the date on which this decision becomes final, and file with the Clerk of the Supreme Court within 15 days thereafter an affidavit as provided for in paragraph (c) of said rule showing compliance. (See Bus. & Prof. Code, § 6126, subd. (c).) This order is effective on the finality of this decision in this court. (Cal. Rules of Court, rule 24(a).)

Petitioner's application for a rehearing was denied May 17, 1990, and the opinion was modified on March 21, 1990, and May 17, 1990, to read as printed above.