[No. S006463. Nov. 13, 1989.]

CLARENCE E. BLAIR, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Clarence E. Blair, in pro. per., and Marvin L. Mathis for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

## OPINION

**THE COURT.**—This is a proceeding pursuant to Business and Professions Code section 6083, subdivision (a) and rule 952(a) of the California Rules of Court to review a recommendation by the Review Department of the State Bar Court that petitioner Clarence E. Blair be suspended from the practice of law for five years; that execution of the order be stayed; and that petitioner be placed on probation for five years subject to several conditions including an actual suspension of eighteen months, various reporting provisions, and supervision by a probation monitor.

The recommendation is based on findings and conclusions of a State Bar referee, adopted in their entirety by the review department, that in three separate client matters petitioner willfully acted in a dilatory fashion and failed to perform legal services competently, in violation of former rule 6-101(2) of the Rules of Professional Conduct of the State Bar. Petitioner stipulated to the facts evidencing his misconduct; that he had willfully violated former rule 6-101(2) in each of the three matters; and that his acts and omissions are cause for discipline. He also stipulated to facts in mitigation and aggravation of his willful misconduct, including an extensive prior disciplinary record.

Petitioner contends the recommended discipline is excessive. We disagree. In light of the seriousness of his misconduct, its willful nature, petitioner's prior disciplinary record, and the absence of compelling mitigating factors, we conclude that the recommended discipline is not sufficient to protect the public. We therefore increase the period of actual suspension to two years.

### FACTS

Petitioner and the State Bar entered into a stipulation pursuant to rule 401 of the Rules of Procedure of the State Bar (hereafter referred to as the Rules of Procedure). None of the relevant facts are in dispute.

## A. *The matters of misconduct giving rise to the present proceeding*

### 1. *The Garcia matter*

In February 1975, petitioner was hired by Jesus Garcia to represent him in a personal injury action. In December 1975, petitioner filed an action on Garcia's behalf. Petitioner thereafter willfully failed to serve the named defendants within the time allowed by statute, willfully failed to complete performance of the services for which he was hired, and willfully failed to communicate with Garcia despite his repeated attempts to contact petitioner. As a result of petitioner's willful failure to timely serve the named defendants, Garcia lost his right to pursue his cause of action. Petitioner has not attempted to make restitution to Garcia.

Petitioner stipulated that his conduct in the Garcia matter was a willful violation of former rule 6-101(2) of the Rules of Professional Conduct of the State Bar (hereafter referred to as former Rule 6-101(2)).[1]

### 2. *The Netherland matter*

In May 1972, petitioner was hired by Idella Netherland, guardian ad litem for her minor son, to represent them in a personal injury matter arising out of injuries sustained by the son. In November 1972, petitioner filed an action on their behalf. On or about October 3, 1977, petitioner offered the defendants an opportunity to settle the case for $3,000. Netherland had not authorized this settlement offer. The defendants accepted the offer, and shortly thereafter petitioner informed Netherland of his offer to settle her case and of the defendants' acceptance. She made no decision regarding the settlement. At all times after October 3, 1977, petitioner misrepresented to the defendants his authority to settle the action.

On or about October 20, 1977, the defendants' counsel informed petitioner that an order approving the compromise of a minor's claim was required before the defendants could issue a settlement check. After October 1977, petitioner willfully failed to communicate with Netherland despite her attempts to contact him regarding the status of the case and to inform him of her decision to accept the settlement.

---

[1] Former Rule 6-101 stated, "A member of the State Bar shall not wilfully or habitually . . . [¶] (2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed." Current rule 3-110(A) (operative May 27, 1989) states, "A member shall not intentionally, or with reckless disregard, or repeatedly fail to perform legal services competently."

On or about January 24, 1979, the defendants' counsel contacted petitioner in writing and again advised him that the defendants would not issue a settlement check unless they received the order approving compromise of a minor's claim. On or about that same date, the defendants' counsel also advised petitioner in writing that the defendants would rescind the settlement and move for dismissal of the case for failure to prosecute unless petitioner obtained the approval order by February 26, 1979.

On March 6, 1981, the defendants filed a notice of motion to dismiss, and the case was dismissed on March 23, 1981. At this time, petitioner was suspended from practicing law. Notices of the motion and dismissal were sent to petitioner because he had failed to file a substitution of attorney or withdrawal as attorney of record or to give other notice of his suspension—which omissions were a willful violation of rule 955 of the California Rules of Court. After March 23, 1981, petitioner willfully failed to inform Netherland that her case had been dismissed.

In February 1987, petitioner gave to Netherland a cashier's check in the amount of $1,800, which would have been her recovery in 1977 if she had been willing to accept the $3,000 settlement. If it had not been for this State Bar proceeding, petitioner would not have contacted Netherland nor attempted restitution to her.

Petitioner stipulated that his conduct in the Netherland matter was a willful violation of former Rule 6-101(2).

3. *The Jennings matter*

In June 1975, petitioner was hired by Wayne Jennings to represent him in a personal injury claim. That same month, petitioner filed an action on Jennings's behalf in the Los Angeles County Superior Court. In May 1976, with Jennings's consent, petitioner negotiated a settlement with two of the defendants in the action and received a settlement check in the amount of $14,000. Petitioner disbursed $9,333.33 to Jennings as his portion of the settlement.

In February 1977, the remaining defendants were granted a change of venue to the Riverside County Superior Court. In May 1980, the defendants moved for dismissal for lack of prosecution. The court dismissed the action in June 1980 because no showing of diligence was made by the plaintiff. Petitioner did not timely move to set aside the dismissal.

At all times after June 1976, petitioner willfully failed to complete performance of the services for which he was hired. After December 1977,

petitioner willfully failed to communicate with Jennings despite his repeated attempts to contact petitioner. Petitioner has not attempted to make restitution to Jennings.

Petitioner stipulated that his conduct in the Jennings matter was a willful violation of former Rule 6-101(2).

### B. *The present State Bar proceeding*

The State Bar Court ordered the consolidation of the three pending matters.[2] As noted above, petitioner and the State Bar entered into a stipulation. They "agreed to be bound by the stipulated facts, regardless of the disposition or degree of discipline ultimately recommended or imposed." The proceeding was heard by a State Bar referee. He independently concluded, as stipulated by the parties, that in each of the three matters petitioner had willfully violated former Rule 6-101(2). The referee also found aggravating and mitigating circumstances pursuant to the Standards for Attorney Sanctions for Professional Misconduct. (Rules Proc. of State Bar, div. V, std. 1.2 (hereafter referred to as the Standards).)

### 1. *Aggravating circumstances*

(a) Petitioner has an extensive prior disciplinary record. (Std. 1.2(b)(i).) He has been suspended from the practice of law on three prior occasions. Effective August 27, 1979, he was suspended for one year, but execution of his suspension was stayed, and he was placed on probation for one year. (Bar Misc. No. 4164.)[3] In that matter, petitioner was found to have misappropriated $221.35 of a client's personal injury settlement during 1975 and 1976 by failing to disburse promptly a portion of the settlement to a third party health care provider. The State Bar found no evidence of bad faith in connection with the misappropriation but did find that petitioner had willfully misrepresented to the State Bar that he had kept the $221.35 in his client's trust account.

On July 3, 1980, petitioner was suspended in a different matter for two years for misappropriating a client's funds, but execution was stayed and he

---

[2] A fourth matter was also consolidated. Petitioner had been served with an order to show cause why the probation imposed in a prior disciplinary proceeding should not be revoked for his failure to file two monthly reports required as a condition of his probation. The State Bar subsequently stipulated, however, that its review of the evidence demonstrated it was insufficient to sustain a finding that petitioner had willfully failed to file the two reports. Based on the stipulation, this matter was dismissed.

[3] The stipulation states that the date of suspension was October 22, 1980, but the order of suspension by this court, filed July 25, 1979, stated that the effective date of the suspension was August 27, 1979.

was placed on probation with an actual suspension of six months. (Bar Misc. No. 4222.) Petitioner was found to have willfully failed and refused to disburse promptly $3,542.53 from the proceeds of the settlement in a personal injury action. More specifically, in January 1976 petitioner received a settlement draft in the amount of approximately $9,250. He remitted the client's share of the settlement and withheld in his trust account $3,542.53. Petitioner represented that he would promptly disburse the funds (in varying amounts) to an insurance company, a physician, and the client's former attorney. Petitioner, however, did not disburse the funds until August and October 1977—after his client had contacted the State Bar. On more than 75 occasions between January 23, 1976, and October 31, 1977, the balance in petitioner's trust account was less than the amount held in trust for the client's benefit. The State Bar found that petitioner had willfully commingled his funds with his client's trust funds on several occasions and had willfully misappropriated to his own use funds of his client.

On October 20, 1980, while he was already on actual suspension in the second disciplinary proceeding (Bar Misc. No. 4222), petitioner was also placed on actual suspension in connection with the first proceeding (Bar Misc. No. 4164), effective October 22, 1980, for failing to pass the Professional Responsibility Examination within the time prescribed in our July 25, 1979, order of suspension. Petitioner's actual suspension terminated on September 15, 1981.

In a third matter (Bar Misc. No. 4366), petitioner was suspended on May 7, 1981, for five years, but execution was stayed on the condition that petitioner be placed on probation for five years subject to certain conditions including an actual suspension of six months to run concurrently with the actual suspension previously imposed in Bar Misc. No. 4222. In that matter, petitioner was found to have willfully misappropriated $527 from the 1976 settlement of a client's personal injury claim by failing to pay that sum to a health care provider who had a lien on the client's recovery. Petitioner willfully misappropriated the $527 for his own use and benefit.

(b) Despite having been served with notices to show cause in the three present matters, petitioner made no effort to contact his former clients regarding their cases and did not attempt, absent State Bar intervention, to make any restitution to them. (Std. 1.2(b)(v).)

(c) The currently charged matters evidence multiple acts of wrongdoing and a pattern of wrongdoing. (Std. 1.2(b)(ii).)

(d) Petitioner's misconduct significantly harmed three separate clients. (Std. 1.2(b)(iv).)

(e) During his testimony in the hearing before the referee, petitioner displayed a lack of candor regarding his misconduct. The referee found petitioner's testimony "evasive, confused, self protective and not open and honest." (Std. 1.2(b)(vi).)

2. *Mitigating circumstances*

The parties stipulated to a partial statement of mitigating circumstances, adopted by the referee, which set forth the following: (a) Petitioner was admitted to the practice of law in California in January 1963.

(b) Petitioner was candid and cooperative with the State Bar in these proceedings. (As noted above, the referee found this was not true in regard to petitioner's testimony.)

(c) In one of the prior disciplinary proceedings (Bar Misc. No. 4366), three prominent citizens and community leaders of Compton testified to the extraordinarily high regard for petitioner in Compton, the community where he practices. He was honored in the community for, among other things, his free legal services to needy organizations and individuals. In that proceeding, the review department recognized this testimony as reflecting mitigation.

Petitioner also submitted a brief personal statement of mitigation (two pages), which was incorporated into the stipulation. Petitioner explained that since he was admitted to practice in 1963 he has maintained law offices in Compton and has devoted his practice largely to claims for personal injury, workers' compensation, and Social Security. From 1969 through 1980, he was the elected City Attorney of Compton. He was also active in several national organizations that deal with municipal affairs. He provided volunteer legal services for the Compton chapter of the National Association for the Advancement of Colored People (NAACP), the Young Men's Christian Association (YMCA), the Compton Chamber of Commerce, and St. Mark's Methodist Church. Petitioner claimed in the statement that he has been rehabilitated. As support for his conclusion, he explained that the present proceeding is based on a different type of misconduct than that which gave rise to the three prior disciplinary proceedings. He also relied on the fact that the presently charged acts of misconduct occurred during the same general time period as did the previously prosecuted misconduct.

Petitioner also submitted two letters on his behalf. One was from Maxcy Filer, a Compton city council member, who is a former law clerk for petitioner. Filer attested to petitioner's involvement in community affairs and his fairness. Filer, however, also stated that "Clarence sometimes takes

too many cases and spreads himself too thin. . . . He tries to help all people and doesn't realize there are only twenty-four hours in one day and seven days a week. [¶] I hope Clarence realizes his limitations and acts within the realm of reality." The other letter was from Reverend Lorenzo Hubbard, the minister of Grace United Methodist Church in Los Angeles. He described petitioner's membership in and work on behalf of the church, for example, providing refreshments for a Bible class and giving an orchid every Sunday to the member who brings the most guests to church. Reverend Hubbard stated his belief that petitioner would not willfully hurt another person.

At the hearing before the referee, a former client of petitioner's testified that she was satisfied with his professional services; that she had referred two clients to him; and that his services are needed in Compton.

Petitioner also testified on his own behalf. He explained that in about 1978 his secretary was assaulted and raped in his office while he was away. During the same general time period, he was tied up and robbed at gunpoint in his office, and a businessman in the neighborhood was beaten to death. Petitioner's office was burgled on another occasion. As a result of these crimes, petitioner has installed bars on his office windows and doors. He keeps his doors locked and he is selective as to whom he lets enter his office. He has a security guard on duty at night. Petitioner testified that these crimes had a "tremendous effect" on him because it made him uneasy and do "things" he otherwise might not do. Petitioner did not explain the "effect" on him or what these "things" were. Nor did he explain how the crimes affected his handling of cases or whether they contributed to the multiple acts of misconduct that he has admitted in this proceeding. He did not seek professional counseling.

Petitioner offered no other reason for his professional problems but seemed to suggest that he had been overworked, testifying that his position as city attorney was very demanding and that he simultaneously held that office while maintaining his private practice.

Petitioner testified that he is changing his office calendar system (in effect when the misconduct occurred) by putting information into a computer and that the new system takes into account periods of limitation. He did not further elaborate on his current case-management procedures.

In addition to the foregoing, the referee found two mitigating circumstances: (1) Since petitioner left office as city attorney in 1980, there has been no evidence of any further violations of the Rules of Professional Conduct. (2) Each of the acts giving rise to the present proceeding initially

took place before the imposition of petitioner's previous suspension in October 1980. Each violation (failure to communicate with a client), however, continued after the prior suspension.

## C. *The referee's decision*

The referee recommended that petitioner be disbarred, finding that the evidence demonstrates a "pattern of wilfully failing to perform services," for which the recommended sanction is disbarment. (Std. 2.4(a).) The referee also relied on Standard 1.7(b), which provides that when a member has a record of two prior impositions of discipline, "[T]he degree of discipline in the current proceeding shall be disbarment *unless the most compelling mitigating circumstances clearly predominate.*" (Italics added.) The referee found that compelling mitigating circumstances do not clearly predominate. He noted that the primary mitigating circumstance in this case is the absence of any reports of chargeable offenses between the termination of petitioner's prior suspension and the present proceeding. The referee explained, however, that to be considered as a mitigating circumstance, the passage of time without further misconduct must be followed by "convincing proof of subsequent rehabilitation." (Std. 1.2(e)(viii).) The referee found no evidence of rehabilitation other than the absence of any new allegations of misconduct.

## D. *The review department's decision*

The review department adopted without modification the referee's findings of fact and conclusions but recommended the less severe sanction of suspension, stating that petitioner had complied with the terms of his most recent probation and that no new complaints had been reported.

### DISCUSSION

Because petitioner stipulated that his misconduct warrants discipline, our task is limited to deciding what degree of discipline is warranted. (*In re Nevill* (1985) 39 Cal.3d 729, 734 [217 Cal.Rptr. 841, 704 P.2d 1332].) Despite his having stipulated to three willful violations of former Rule 6-101(2), petitioner now contends that *no* discipline should be imposed. He contends in the alternative that if discipline is warranted the State Bar's recommendation is too severe. We disagree. Petitioner bears the burden of demonstrating that the review department's discipline recommendation is unwarranted or erroneous. (*Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 981 [239 Cal.Rptr. 675, 741 P.2d 172, 65 A.L.R.4th 1]; Bus. & Prof. Code, § 6083, subd. (c).) He makes two primary arguments, neither of which has merit.

## A. *Timeliness of the State Bar proceeding*

Standard 1.2(e)(ix) defines as a mitigating factor "excessive delay in conducting disciplinary proceedings, which delay is not attributable to the member and which delay prejudiced the member." Petitioner contends delays in instituting this proceeding are a mitigating circumstance that warrant a less severe sanction than recommended by the State Bar. We reject this argument for several reasons.

Petitioner claims his acts of misconduct were committed in 1976 and 1977 but that the State Bar did not commence proceedings until 1984 and that the referee's decision was not filed until September 1987. This is a mischaracterization of the facts. The misconduct did not terminate in 1976 and 1977. The Jennings lawsuit was not dismissed until June 1980, and the Netherland lawsuit was not dismissed until March 1981. Moreover, the referee found that in each of the three matters (Garcia, Netherland, and Jennings) petitioner's failure to communicate with his clients continued until at least October 1980. The alleged delay is not nearly as lengthy as petitioner would have us believe.

Aside from being factually incorrect, petitioner fails to make clear whether his argument is that his clients unduly delayed contacting the State Bar or that it impropery delayed investigating and prosecuting the charges against him after being contacted by his clients. Either argument is untenable.

■ The record does not contain any evidence that petitioner's clients unduly delayed notifying the State Bar. Petitioner willfully failed to prosecute their actions, and when those actions were dismissed he failed to inform them of the dismissals or to otherwise communicate with them. Petitioner is the person who delayed discovery of his misconduct. His clients did not act with similar procrastination. The Netherland lawsuit was not dismissed until March 1981, and after petitioner's continuing failure to communicate with Netherland, she complained to the State Bar in February 1982. Similarly, the Jennings lawsuit was dismissed in June 1980, and after the client repeatedly tried to communicate with petitioner, the client filed a complaint with the State Bar in May 1983.[4] Petitioner also overlooks the referee's finding that petitioner's failure to communicate with his clients continued until after 1980. Under the circumstances, petitioner's clients cannot fairly be charged with undue delay.

---

[4] The Netherland, Jennings, and Garcia complaints are not in the record, but the State Bar has represented in its brief to this court the dates on which those complaints were filed. Petitioner does not dispute the accuracy of the State Bar's representation.

■ Nor is there any evidence that the State Bar unduly delayed instituting or prosecuting these proceedings. The Netherland complaint was filed in February 1982, and the notice to show cause was issued in May 1984 and served on petitioner in October 1984. The Jennings complaint was filed in May 1983, and the notice to show cause was issued in April 1985 and served in July 1985. The Garcia complaint was filed in 1982 (the record does not reflect the month), and the notice to show cause was issued in July 1984 and served in October 1984. Thus, in each matter approximately two to two and one-half years elapsed between lodging of the complaint and the State Bar's commencement of disciplinary proceedings. Petitioner does not offer a single reason why this period of time was too lengthy. The State Bar must be allowed an adequate time to investigate charges and decide whether to commence disciplinary proceedings. This is especially so in this case, where three separate matters were brought to the State Bar's attention.

Even if there were some unnecessary delay, petitioner's objection to it must fail for two reasons. First, petitioner never raised any objection in the proceedings before the State Bar based on alleged delay. He does so for the first time in this court. He therefore must be deemed to have waived any objection based on the alleged delay. Second, "[M]ere lapse of time is no defense unless *specific* prejudice is shown." (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 449 [113 Cal.Rptr. 602, 521 P.2d 858], original italics; *In re Ford* (1988) 44 Cal.3d 810, 818 [244 Cal.Rptr. 476, 749 P.2d 1331].) Similarly, Standard 1.2(e)(ix) provides that excessive delay is a mitigating factor only if the member is prejudiced. Petitioner does not even allege, much less demonstrate, any prejudice from the passage of time. The alleged delay did not hamper his ability to gather and present evidence. He stipulated to all the relevant facts. Petitioner also ignores his prior disciplinary record. If the misconduct giving rise to the present proceeding had been discovered earlier, the State Bar might have imposed a much harsher sanction in the prior disciplinary proceedings. Instead of being prejudiced by the alleged delay, petitioner may have benefitted from it by receiving a lesser recommended sanction in those proceedings.

We conclude that petitioner has failed to show any unnecessary delay by either his clients or the State Bar and that, even if there were such delay, petitioner has failed to demonstrate any specific prejudice.

B. *Appropriateness of the recommended discipline*

In support of his argument that the recommended discipline is disproportionate to his misconduct, petitioner makes several contentions. None are persuasive.

Petitioner first contends the referee failed to consider evidence of mitigating circumstances presented at the hearing. Petitioner, however, does not identify the allegedly disregarded evidence or demonstrate how it showed mitigation. The evidence presented as mitigation at the hearing consisted of the testimony of one former client as to her satisfaction with petitioner's services and petitioner's own testimony as to the reasons for his misconduct and his attempts to improve his office management. There is nothing in the record that supports the assertion that the referee did not consider all the hearing testimony. To the contrary, he even examined the witnesses. Perhaps petitioner means to argue that the referee did not give the evidence sufficient weight in recommending disbarment. That argument, however, is moot because the review department rejected the referee's recommendation.

Petitioner contends the review department should have given more weight to the fact that his misconduct "took place a long time ago" and during the same general time period when he committed the other acts of misconduct that gave rise to the three prior disciplinary proceedings. The review department gave great weight to this fact. Its decision states, "[T]he Review Department hereby advises the Supreme Court that its reason for recommending less discipline [than recommended by the referee] is that it appears that in the past six (6) years Respondent [petitioner in this court] has complied with his terms of probation and that no new complaints have come to the attention of the Review Department." The department expressly relied on the absence of reported misconduct in the time since petitioner's most recent prior discipline. Petitioner does not explain why even greater weight should have been given to this factor.

Petitioner also contends the referee and review department failed to take into account his cooperation and candor in this proceeding. The record on its face refutes this assertion. The State Bar stipulated to petitioner's cooperation and candor, and the referee noted the stipulation in his findings, which the review department adopted without modification. Moreover, petitioner was not as helpful as he portrays himself. The referee found that petitioner's hearing testimony was "evasive, confused, self protective and not open and honest." ▮ We give great weight to the findings of a referee, particularly as to the credibility of witnesses. (*Beery* v. *State Bar* (1987) 43 Cal.3d 802, 810 [239 Cal.Rptr. 121, 739 P.2d 1289].) Moreover, our independent review of the hearing transcript convinces us that the referee's characterization of petitioner's testimony was correct.

▮ Contrary to petitioner's assertion, the recommended suspension is *not excessive under the Standards.* If a member has two prior impositions of discipline, the degree of discipline in the present proceeding "shall be disbarment unless the *most compelling* mitigating circumstances *clearly*

predominate." (Std. 1.7(b), italics added.) The mitigating circumstances in this case are few, they are not compelling, and they do not clearly predominate. Neither the referee nor review department made any such finding. To the contrary, the referee expressly found that " 'the most compelling' mitigating circumstances do *not* clearly predominate," and the review department adopted this finding. (Italics added.) Moreover, Standard 2.4(a) states, "Culpability of a member of a pattern of wilfully failing to perform services demonstrating the member's abandonment of the causes in which he or she was retained *shall result in disbarment*." (Italics added.) The referee found that a pattern was shown in this case "because of the similarity of the charged misconduct occurring in separate cases and demonstrating a consistent course of conduct over a significant period of time." The review department adopted this finding, which petitioner does not challenge. Thus, based on the findings in this case, the discipline specified by the Standards is disbarment. If the recommended discipline is inconsistent with the Standards, it is inconsistent in petitioner's favor. ■■■■■ The recommended suspension is not excessive.[5]

To the contrary, the recommended actual suspension of only 18 months is not sufficient to protect the public. The period of actual suspension must be increased to two years. Although we accord great weight to the review department's recommendation, the ultimate decision rests with this court, and we have not hesitated to impose a harsher sanction than recommended by the department. (*In re Mostman* (1989) 47 Cal.3d 725, 740 [254 Cal.Rptr. 286, 765 P.2d 448] [actual suspension increased from eighteen months to two years]; *Carter* v. *State Bar* (1988) 44 Cal.3d 1091, 1100-1101 [245 Cal.Rptr. 628, 751 P.2d 894] [one-year probation with no actual suspension increased to two years' probation with six months' actual suspension]; *Martin* v. *State Bar* (1978) 20 Cal.3d 717, 723 [144 Cal.Rptr. 214, 575 P.2d 757] [six months' actual suspension increased to one year].) When the facts have warranted doing so, we have even rejected a recommendation of suspension and disbarred the attorney. (*In re Nevill, supra,* 39 Cal.3d 729, 735.) This is an appropriate case for increasing the recommended discipline.

In deciding appropriate discipline, we consider the underlying misconduct and aggravating and mitigating circumstances, if any. (*Warner* v. *State*

---

[5] We recognize that the Standards are merely guidelines for the State Bar and that they do not mandate the discipline to be imposed in a particular case. (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754].) In future cases, however, in which the State Bar recommends discipline different from that called for in the Standards, we believe it would be most helpful to this court, and perhaps to the member being disciplined, for the State Bar to make clear the reasons for its departure from its own Standards. As noted above, in this case the Standards call for disbarment unless the most compelling circumstances clearly predominate. (Std. 1.7(b).) The review department, however, adopted the referee's finding of no such circumstances. Thus, it is not clear why the review department declined to impose the sanction of disbarment.

*Bar* (1983) 34 Cal.3d 36, 43 [192 Cal.Rptr. 244, 664 P.2d 148].) Each of these factors weighs in favor of an actual suspension of at least two years.

### 1. *Nature of petitioner's misconduct*

■ Petitioner has stipulated to three separate instances of willful failure to perform services and willful failure to communicate with his clients. We have repeatedly made clear that such behavior is "serious misconduct" that constitutes "basic violations of petitioner's oath and duties as an attorney." (*Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 710 [224 Cal.Rptr. 738, 715 P.2d 699].) Even the ultimate sanction of disbarment is appropriate when there has been a pattern of misconduct, as found by the State Bar in this case. " 'Habitual disregard by an attorney of the interests of his or her clients combined with failure to communicate with such clients constitute acts of moral turpitude justifying disbarment.' " (*Kent* v. *State Bar* (1987) 43 Cal.3d 729, 735 [239 Cal.Rptr. 77, 739 P.2d 1244], quoting *McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 85 [196 Cal.Rptr. 841, 672 P.2d 431]; Martin v. *State Bar, supra,* 20 Cal.3d at p. 722.)

### 2. *Absence of mitigating factors*

■ A brief review of the mitigating factors recognized in Standard 1.2(e) demonstrates the near total lack of mitigation in this proceeding: (i) Absence of a prior disciplinary record—The opposite is true in this case.

(ii) Good faith of the member—Petitioner stipulated to intentional misconduct.

(iii) Lack of harm to the client—Petitioner's clients lost their causes of action.

(iv) Extreme emotional difficulties which expert testimony establishes was directly responsible for the misconduct—Except for a brief mention of stress caused by two assaults (an armed robbery of petitioner and the rape of his secretary) and an increase in neighborhood crime, petitioner did not rely on an emotional disability. He failed to explain how the alleged stress affected his ability to practice law, he never sought any professional counseling, and he presented no expert testimony. Moreover, it is significant that the assaults occurred in 1978, well after his misconduct began. In the Garcia matter, petitioner ceased communicating with his client in March 1976, two years before the assaults. He misrepresented his authority to settle the Netherland matter and ceased communicating with the client beginning in October 1977. In the Jennings matter, petitioner ceased to perform any services after June 1976 and ceased communicating with the

client after December 1977. In support of his argument that this proceeding was unduly delayed, petitioner relies heavily on the fact that his misconduct took place in 1976 and 1977—before the assaults. It is clear that the unfortunate violence suffered by petitioner and his secretary did not and could not have caused his misconduct.

(v) Spontaneous candor and cooperation to the victims of the misconduct and the State Bar—Petitioner admitted that he would not have informed his clients of his misconduct if the State Bar had not intervened. He was candid and cooperative with the State Bar after it commenced proceedings, but only up to a certain point; the referee found petitioner was not candid and cooperative at the hearing. Moreover, despite the reference in the Standards to an attorney's cooperation with the State Bar, that cooperation should be given little consideration except in the most compelling circumstances because an attorney is statutorily required "To cooperate and participate in any disciplinary investigation or other regulatory or disciplinary proceeding pending against the attorney." (Bus. & Prof. Code, § 6068, subd. (i).) At best, petitioner's limited cooperation was compliance with this duty.

(vi) An extraordinary demonstration of good character attested to by a wide range of references in the general and legal communities who are aware of the full extent of the member's misconduct—Petitioner relied on the testimony of one client that she was satisfied with his performance in a single matter, a letter from petitioner's former law clerk, and a letter from a minister as to petitioner's church activities. The testimony by these persons suggests that petitioner is not a venal person, but it is not an "extraordinary demonstration," and it is not from a "wide range of references." Indeed, there is not a single recommendation of petitioner by a member of the legal community. Moreover, except as to the former client who testified, there is no evidence that petitioner's character witnesses had any knowledge of his misconduct.

(vii) The member's prompt and spontaneous steps that demonstrate remorse and recognition of the wrongdoing, which steps are designed to timely atone for the misconduct—Petitioner took no prompt or spontaneous steps to atone for his misconduct. In the Netherland matter, he eventually attempted to compensate his clients for the harm they suffered but admitted that he would not even have contacted them if the State Bar had not served him with a notice to show cause. ■ Restitution is no defense when made under the pressure of a State Bar investigation. (*Sevin* v. *State Bar* (1973) 8 Cal.3d 641, 646 [105 Cal.Rptr. 513, 504 P.2d 449].) Moreover, the record suggests that petitioner has little remorse for his misconduct. The only reference to his attitude was in response to a question as to whether he had adequate case management procedures for his private

practice while he was also a city attorney. Petitioner stated, "I thought I did. But those three cases somehow got through the system, much to my regret." This passing comment is insufficient to reflect genuine remorse.

(viii) The passage of considerable time since the misconduct occurred followed by convincing proof of subsequent rehabilitation—Although several years have passed without new reports of misconduct, there is no "convincing proof" of petitioner's subsequent rehabilitation. Indeed, there is no evidence in that regard other than petitioner's own claim that he has been rehabilitated. He contends he is more selective in his acceptance of cases, but he offers no evidence to support this assertion. Rather, he contradicted himself at the hearing before the referee, first claiming greater selectivity but then admitting that he still handles a large volume of cases. He explained that, "In order to survive, it is necessary that you have a *huge backlog* . . . ." (Italics added.) His own evidence in mitigation suggests a longstanding inability to manage a substantial caseload. His former law clerk stated that petitioner "sometimes takes too many cases and spreads himself too thin," and that he "doesn't realize there are only twenty-four hours in one day and seven days a week." Petitioner testified that he found it "difficult" to manage a large caseload.

Petitioner also claims to have improved his office procedures, but he did not explain clearly to the referee how he has improved his case management other than to state that he now has a computer and that he has been setting up a calendaring system that notifies him of three-year and five-year statutes of limitation. He provided no specifics as to his "new" system except that his office calendar is prepared by his secretary subject to his supervision. This claim is especially unreassuring because petitioner also testified that, when the failures to prosecute charged in this proceeding occurred, his secretary was responsible for preparing his master calendar subject to his supervision. Except for the purchase of a computer, nothing appears to have changed. Other efforts to improve his office management skills are conspicuous by their absence. For example, there is no evidence that he has hired a consultant or taken a continuing legal education course. Petitioner's claim of new and improved procedures lacks credibility and is uncorroborated. An "uncorroborated claim of reform is indeed unreliable." (*Gary* v. *State Bar* (1988) 44 Cal.3d 820, 828 [244 Cal.Rptr. 482, 749 P.2d 1366].)[6]

---

[6]The claim of rehabilitation is also questionable in light of petitioner's admission that he has no malpractice insurance despite his repeated misconduct that has resulted in the loss of his clients' causes of action. Even if one were sanguine enough to accept his unsupported assurances of rehabilitation, one would think that out of simple prudence he would protect his current clients by insuring himself. His failure to do so tends to suggest that he fails to appreciate the severity of his prior misconduct and the harm that future misconduct could cause.

(ix) Excessive delay in conducting disciplinary proceedings—This is the primary mitigating factor claimed by petitioner. There was no excessive delay. (See discussion at pp. 773-774, *ante.*)

Petitioner seems to rely on two allegedly mitigating circumstances not recognized in the Standards. (Petitioner has not squarely contended that these circumstances caused his misconduct or that they warrant a lesser sanction than recommended by the State Bar, but he has implicitly suggested as much.) Because this court is not bound by the Standards, we are free to consider these circumstances, even though petitioner obliquely presents them. Neither, however, is persuasive.

First, he testified at the hearing that his former employment as city attorney was "very demanding," but that he simultaneously maintained his private law practice and continued to acquire new clients. Apparently, petitioner means to suggest that a heavy workload was partially responsible. Perhaps the claim is made indirectly because it is so weak. ▮ "[O]ffice workload and scheduling problems do not generally serve to substantially mitigate misconduct." (*Carter* v. *State Bar, supra,* 44 Cal.3d 1091, 1101; *McMorris* v. *State Bar* (1981) 29 Cal.3d 96, 99 [171 Cal.Rptr. 829, 623 P.2d 781].) This rule is especially applicable in this case. Petitioner's workload was self-imposed; it was his choice to run for and hold political office. Politicians are entitled to no special dispensation from the Rules of Professional Conduct.

Second, petitioner testified that he continued his practice in Compton after the criminal violence that he suffered because Compton citizens have almost no lawyers in the area to represent them. He claimed that "He has not deserted the area as many other attorneys have done," in response to increased crime in Compton. Even if we accept petitioner's uncorroborated claim that he remained in Compton to serve his community, it is entitled to little weight. Petitioner does not contend that his purpose is altogether altruistic. He apparently maintains a practice *for profit,* aside from occasional pro bono work that he claims to have done for several public service organizations. Moreover, he did not submit any character or professional references from those organizations. In short, there is only minimal evidence of community service.

Moreover, if we were to be particularly forgiving of attorneys who practice in high crime or poverty-stricken areas, we would be improperly suggesting that residents of those areas may properly be subjected to a lesser standard of legal representation. They should not be treated as second-class clients. Even petitioner's counsel admitted at the hearing before the referee that statewide standards should apply.

█ In summary, although the Standards generously provide for a wide range of mitigating factors, petitioner was able to establish with any degree of certainty only *one* element of *one* factor—the passage of time without further reports of misconduct. This is at best a marginal showing of mitigation.

3. *Aggravating factors*

That two years' actual suspension is the appropriate discipline is further demonstrated by the referee's findings (adopted by the review department) that five of the six aggravating factors identified in the Standards are present in this case. (Std. 1.2(b).) Petitioner does not challenge any of these findings, and our independent review of the record convinces us that they are supported by substantial evidence. (The following paragraph designations correspond to the provisions of Standard 1.2(b).)

(i) The existence of a prior disciplinary record and the nature and extent of that record—Petitioner has been disciplined for three prior instances of misconduct, two of which were willful misappropriation of funds. █ █ "We have long held that the misappropriation of client funds held in trust is a serious breach of professional ethics calling for disbarment in the absence of compelling mitigating circumstances." (*In re Ford, supra,* 44 Cal.3d 810, 816.) Petitioner's prior record is a severe aggravating factor.

(ii) Multiple acts or a pattern of misconduct—The evidence establishes multiple acts of misconduct and a pattern of wrongdoing.

(iv) Harm to clients—Petitioner's misconduct significantly harmed three separate clients.

(v) Member's indifference—Despite being served with notices to show cause, petitioner made no effort to contact his clients regarding the loss of their causes of action nor make any effort (absent State Bar intervention) to make restitution. Petitioner has consistently demonstrated a callous indifference to his clients, both before and after this proceeding began.

(vi) Lack of candor and cooperation—The referee found that during petitioner's testimony he displayed a lack of candor and that his testimony was "evasive, confused, self protective, and not open and honest."

## Disposition

Petitioner's disciplinary record suggests that he continues to pose a threat to his clients. Similarly, his assertion that *no* discipline should be imposed

shows that he does not recognize his problems and that he may not correct them. Based on our review of the entire record, we conclude that an actual suspension of only 18 months is not sufficient to protect the public. An actual suspension of two years is more appropriate.

It is ordered that petitioner be suspended from the practice of law for five years from the date this opinion is final, that execution of the order of suspension be stayed, and that petitioner be placed on probation, with a probation monitor referee to be assigned pursuant to rules 610 and 611, Rules of Procedure of the State Bar, for a period of five years, subject to the following conditions: (1) During the first two years of the period of probation, he is placed on actual suspension from the practice of law in California.

(2) During the period of probation, he shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California.

(3) During the period of probation, he shall file with the State Bar Court reports concerning his compliance with the conditions of probation as directed by the probation monitor referee.

(4) During the period of probation, petitioner shall maintain on the official membership records of the State Bar, as required by Business and Professions Code section 6002.1, his current office or other address for State Bar purposes and all other information required by that section. Petitioner shall report to the membership office of the State Bar all changes of information as prescribed by section 6002.1.

(5) Except to the extent prohibited by the attorney-client privilege and the privilege against self-incrimination, petitioner shall answer fully, promptly, and truthfully to the presiding referee of the State Bar Court, his designee, or to any probation monitor referee assigned under these conditions of probation, at the petitioner's office or an office of the State Bar (provided, however, that nothing herein shall prohibit the petitioner and the presiding referee, designee, or probation monitor referee from fixing another place by agreement), any inquiry or inquiries directed to him personally or in writing by the presiding referee, designee, or probation monitor referee relating to whether petitioner is complying or has complied with these terms of probation.

(6) Before resuming the practice of law after the period of actual suspension, petitioner shall provide the probation monitor referee with written certification that petitioner has attended in its entirety a course or seminar in law office practices or management conducted by the California Continu-

ing Education of the Bar (CEB) or a similar course approved by the probation monitor referee.

(7) Before resuming the practice of law after the period of actual suspension, petitioner shall provide the probation monitor referee with written certification that petitioner has obtained professional liability insurance in an amount satisfactory to the probation monitor referee or, alternatively, that petitioner has in good faith attempted to do so but that such insurance is either unavailable to petitioner or that its cost would unreasonably restrict his financial ability to resume the practice of law.

(8) Before the expiration of his period of actual suspension, petitioner shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners.

(9) Petitioner shall comply with rule 955 of the California Rules of Court, including subdivision (a), within 30 days of the effective date of the decision of this court, and petitioner shall file the affidavit required by rule 955(c) within 40 days of the effective date of this decision.

By this order, petitioner Clarence E. Blair is referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. Petitioner shall promptly review the terms and conditions of his probation with the probation monitor referee to establish a manner and schedule of compliance, consistent with these terms of probation. During the period of probation, petitioner shall furnish reports concerning his compliance as may be requested by the probation monitor referee. Petitioner shall cooperate fully with the probation monitor referee to enable the referee to discharge the referee's duties pursuant to rule 611, Rules of Procedure of the State Bar.

At the expiration of the period of probation, if petitioner has complied with the terms of probation, the order of this court suspending petitioner from the practice of law for five years shall be satisfied and the suspension shall be terminated.

This order is effective on finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)