[No. S012068. Dec. 6. 1990.]

SUZANNE LOUISE HARRIS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Suzanne Louise Harris, in pro. per., for Petitioner.

Diane C. Yu, Richard J. Zanassi, Margaret E. Fourt and Starr Babcock for Respondent.

OPINION

**THE COURT.**—In this proceeding we review the recommendation of the Review Department of the State Bar Court (review department) that petitioner, Suzanne Louise Harris, be suspended from the practice of law for three years, that execution of the order be stayed, and that petitioner be placed on probation for three years upon conditions including actual suspension from practice for ninety days. Petitioner contends that the findings and conclusions of the State Bar Court are not supported by the evidence, that the recommended discipline is excessive, and that the disciplinary proceeding is barred by the doctrine of laches. We disagree, and adopt the recommendation of the review department.

FACTS

Petitioner was admitted to the practice of law in January 1970. She has no prior record of discipline.

In a notice to show cause filed July 31, 1987, the State Bar charged petitioner, in essence, with abandoning a client. After an evidentiary hearing, the Hearing Department of the State Bar Court (hearing panel) issued findings of fact and concluded that petitioner violated her duties as an attorney within the meaning of Business and Professions Code section 6103,[1] and wilfully violated former rules 2-111(A)(2), 6-101(A)(2), and 6-101(2) of the State Bar Rules of Professional Conduct.[2]

---

[1] Section 6103 provides: "A wilful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension." This section does not itself define a duty or obligation but provides only that a violation of an oath or duty defined elsewhere is a ground for discipline. (*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 815 [263 Cal.Rptr. 798, 781 P.2d 1344].)

[2] The conduct at issue took place in the years 1980 through 1984. At different times during this period, two versions of the Rules of Professional Conduct governing an attorney's failure to diligently perform legal services were in force. (See *Layton* v. *State Bar* (1990) 50 Cal.3d 889, 893, fn. 1 [268 Cal.Rptr. 845, 789 P.2d 1026].) The present rules took effect on May 27,

The evidence and the findings and conclusions of the hearing panel, which were adopted by the review department, indicate the following.

In May 1980, Al Shulman retained petitioner to take over a "slip-and-fall" case previously handled by another law firm. The lawsuit had been filed against Twin Dragon Restaurant (Twin Dragon) for injuries suffered by Shulman's wife on the Twin Dragon parking lot. A short time before the retention, Mrs. Shulman had died while a patient at Kaiser Foundation Hospital (Kaiser). In addition to processing the slip-and-fall case, petitioner was to file a wrongful death action against Twin Dragon and Kaiser.

Thereafter, Shulman made numerous attempts to communicate with petitioner by making telephone calls and leaving messages which were not returned. Finally, on October 2, 1980, Shulman wrote to petitioner complaining about the latter's failure to return telephone calls and his inability to reach her.

Subsequently, petitioner and a paralegal she employed each became ill with flu-like symptoms around Thanksgiving Day, 1980. For the next several months, petitioner was intermittently ill, but worked much of the time. The symptoms were diagnosed as typhoid fever on June 13, 1981, and petitioner ceased work completely. By September 3, 1981, she was allowed to return to work on a part-time basis. The paralegal went on disability leave for about 18 months beginning in June 1981. Nevertheless, although ill, the paralegal went to the office two to three times per week to pick up the mail and respond to telephone calls. He worked 10 to 30 hours per week and once or twice worked 40 hours per week. In 1981 and 1982, petitioner associated with a cocounsel who assisted her in some matters. The Shulman case was not transferred to the cocounsel.

On May 14, 1981, the last day for doing so, petitioner filed, but did not serve, a wrongful death action against Kaiser and Twin Dragon. Although the Shulmans had two adult children, only Shulman was a named plaintiff.

---

1989, after the transgressions involved here. (See *Arm v. State Bar* (1990) 50 Cal.3d 763, 768, fn. 2 [268 Cal.Rptr. 741, 789 P.2d 922].)

Former rule 2-111(A)(2) prevented an attorney from withdrawing "from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

Former rule 6-101(A)(2) provided that "[a] member of the State Bar shall not intentionally or with reckless disregard or repeatedly fail to perform legal services competently."

Former rule 6-101(2) provided that a member of the State Bar "shall not wilfully or habitually [¶] [f]ail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed."

The two children signed a statement that petitioner prepared declining to be coplaintiffs. Twin Dragon filed an answer to the slip-and-fall case on June 15, 1983.

On March 20, 1984, Shulman's family attorney, George Bane, wrote to petitioner complaining of his inability to reach her and her unresponsiveness. On April 23, 1984, not having heard from petitioner, Bane wrote to counsel for Twin Dragon requesting a copy of the complaint and answer in the slip-and-fall case. On April 25, 1984, Shulman himself wrote to petitioner requesting that she immediately return his file to him. On May 3, 1984, petitioner finally called Shulman. She said she had not been in touch because of a possible Federal Bureau of Investigation "bug" on her telephone, and attempted to discourage him from requesting his file. Attorney Bane wrote to petitioner again on May 8, 1984, complaining of her inactivity and requesting that the Shulman file be sent to Shulman.

On May 14, 1984, the last day for doing so, petitioner had a summons issued and served Kaiser. Kaiser demanded arbitration on May 29, 1984.

On June 8, 1984, petitioner, her paralegal, Shulman and Bane met in Bane's office. Petitioner admitted she had been remiss, but claimed she had been ill. After that meeting, neither Shulman nor Bane heard from petitioner, nor could they reach her or communicate with her. On June 18, 1984, Twin Dragon answered the wrongful death complaint. There is no evidence when it was served on Twin Dragon.

On September 19, 1984, Bane wrote to petitioner demanding return of the Shulman file. One week later, Shulman was substituted in as counsel, in propria persona, in the wrongful death case. Not until October 10, 1984, did Bane receive two partial folders of the Shulman matters. He did not receive the balance of the file until November.

From her retention on May 27, 1980, until she substituted out as counsel of record on September 25, 1984, petitioner made no attempt to settle either the slip-and-fall case or the wrongful death case, nor did she make any effort to preserve testimony, take depositions, engage in discovery, or vigorously prosecute the cases for which she had been retained.

In February 1985, Richard Feinberg, an expert in medical malpractice cases, became attorney of record in the wrongful death matter. He estimated the case was originally worth around $200,000 to $250,000 because there was clear liability on the part of the defendants. Shortly thereafter, on March 7, 1985, Shulman died. Because petitioner had failed to include the

two Shulman children as plaintiffs, Feinberg had to settle the case for substantially less than it was originally worth.

Based on these facts, the hearing panel found that petitioner abandoned the matters for which she had been retained, showed a lack of candor to her client, and demonstrated indifference toward the consequences of her misconduct. Her actions caused the client and his estate monetary loss and prejudiced their causes of action. The panel also found that various contentions by petitioner either were not consistent with the evidence or were not germane to the issue before the panel.

As mitigating circumstances, the hearing panel cited petitioner's illness with typhoid fever, and the absence of other complaints or prior discipline. It also noted the excessive delay between the time the client filed a complaint with the State Bar and the issuance of the notice to show cause. The delay was found not prejudicial to petitioner.

The hearing panel recommended that petitioner be suspended from the practice of law for six months, that the suspension be stayed, and that petitioner be placed on probation for two years with sixty days' actual suspension. By a twelve-to-two vote, the review department adopted the findings of fact and conclusions of law of the hearing panel, but recommended that petitioner be suspended for three years, stayed, with three years' probation and ninety days' actual suspension. The review department recommended greater discipline than the hearing panel because of petitioner's lack of candor, lack of remorse and her failure to appreciate the danger of her actions to her client. The two dissenters would have followed the recommendation of the hearing panel regarding the discipline because the case "appears to be no more than a single count abandonment matter."

### DISCUSSION

Petitioner first challenges the sufficiency of the evidence to support the findings and conclusions below. ■ Petitioner bears the burden of showing that the State Bar's findings are not supported by substantial evidence. (*Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 736 [187 Cal.Rptr. 30, 653 P.2d 321].) In assessing the evidence, "[a]lthough we independently examine the record, we give great weight to the findings below, especially when they are based on conflicting testimony." (*Van Sloten* v. *State Bar* (1989) 48 Cal.3d 921, 931 [258 Cal.Rptr. 235, 771 P.2d 1323].)

Petitioner has failed to meet her burden. She largely repeats her testimony and argument below. Those who heard the evidence, however, were in a better position to observe the demeanor of the witnesses and the character

of their testimony. Consequently, merely repeating her version of the events does not meet the burden of demonstrating that the findings below are erroneous. (*Van Sloten* v. *State Bar*, *supra*, 48 Cal.3d at p. 931.)

■ As the review department found, petitioner's arguments generally do not respond to the charges and the evidence. Except for filing the wrongful death lawsuit and later serving it on Kaiser, both on the last possible day, petitioner did virtually *nothing* for over four years to perform the duties for which she had been retained. She also repeatedly failed to communicate with either Shulman or his family attorney, Bane. "Failure to communicate with, and inattention to the needs of, a client may, standing alone, constitute grounds for discipline." (*Layton* v. *State Bar*, *supra*, 50 Cal.3d at pp. 903-904.) The record amply supports the finding of misconduct.

Petitioner also contends that the recommended discipline is excessive. ■ We exercise our independent judgment in determining the appropriate discipline, but in doing so we give great weight to the recommendation of the State Bar Court. (*Arm* v. *State Bar*, *supra*, 50 Cal.3d at p. 774.) Petitioner bears the burden of demonstrating that the recommendation is unwarranted or erroneous. (*In re Lamb* (1989) 49 Cal.3d 239, 245 [260 Cal.Rptr. 856, 776 P.2d 765].) The protection of the public and the bar, not punishment, is the primary purpose of attorney discipline. We must accordingly consider all relevant mitigating and aggravating circumstances. (*Coombs* v. *State Bar* (1989) 49 Cal.3d 679, 693 [262 Cal.Rptr. 554, 779 P.2d 298].)

■ Reviewing the record independently, we find the recommendation of the review department to be reasonable and adopt it. In *Van Sloten* v. *State Bar*, *supra*, 48 Cal.3d at pages 933-934, we considered a single count of abandonment "without serious consequences to the client," and concluded that a two-year suspension was excessive. As noted above, however, the client in this case suffered substantial prejudice. Furthermore, petitioner has shown no remorse, or even an understanding that her years of neglect were improper in any respect. An attorney's failure to accept responsibility for, or to understand the wrongfulness of, her actions may be an aggravating factor unless it is based on an honest belief in innocence. (*Id.* at p. 932.)

Although petitioner's illness was properly considered as a mitigating circumstance, it began *after* Shulman's complaining letter of October 2, 1980, and does not excuse four years of neglect and failure to communicate. In cases involving the failure to perform services diligently, we have not hesitated to impose an actual suspension even greater than that recommended in this case. (*Layton* v. *State Bar*, *supra*, 50 Cal.3d at p. 904, and cases cited therein.) After reviewing the record, we conclude that the recommended discipline is appropriate in order to protect the public and

impress upon petitioner, for future purposes, the serious nature of the abandonment of her client.

■ Finally, petitioner summarily contends that the disciplinary proceeding is barred by the doctrine of laches. Although the review department noted the delay in filing the notice to show cause, it found no prejudice. The imposition of discipline may be challenged on the basis of delay only upon a showing of specific prejudice. (*Rodgers* v. *State Bar* (1989) 48 Cal.3d 300, 310 [256 Cal.Rptr. 381, 768 P.2d 1058]; *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 121, fn. 3 [202 Cal.Rptr. 349, 680 P.2d 82].) Petitioner has not alleged prejudice, much less demonstrated it. (*Blair* v. *State Bar* (1989) 49 Cal.3d 762, 774 [263 Cal.Rptr. 641, 781 P.2d 933].) Petitioner's labeling the issue as one of laches does not aid her. Laches also requires a showing of prejudice. (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 163 [181 Cal.Rptr. 784, 642 P.2d 1305].) We therefore find that the delay does not invalidate the proceedings.

### DISPOSITION

We order that petitioner Suzanne Louise Harris be suspended from the practice of law for a period of three years; that execution of the order for such suspension be stayed; and that petitioner be placed upon probation for three years upon all of the conditions of probation adopted by the review department at its May 18, 1989, meeting, including the condition that during the first ninety days of the period of probation, she shall be actually suspended from the practice of law in the State of California. Petitioner shall also pass the Professional Responsibility Examination within one year after the effective date of this order, and comply with the provisions of rule 955(a) and (c), California Rules of Court, within 30 and 40 days, respectively, after the effective date of this order.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)