Filed 8/22/16  Valtierra v. Weng's Enterprises CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FEDERICO VALTIERRA, | |
| Plaintiff, | G051837 |
| v. | (Super. Ct. No. 30-2012-00595239) |
| WENG'S ENTERPRISES, INC., | O P I N I O N |
| Defendant and Respondent; | |
| PETER HOLZER, | |
| Objector and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Sheila Fell, Judge.  Reversed.

Peter Holzer, in pro. per., for Objector and Appellant.

WHGC and Michael G. York for Defendant and Respondent.

\*          \*          \*

Under Code of Civil Procedure section 128.5,[1] defendant and respondent Weng's Enterprises, Inc. (Weng) moved for sanctions against its former attorney, objector and appellant Peter Holzer. Weng argued it incurred substantial attorney fees and costs when it replaced Holzer as its attorney of record in the underlying lawsuit because Holzer unreasonably delayed transferring his files to Weng's new counsel, and the files he eventually transferred were incomplete. The trial court granted Weng's motion and ordered Holzer to pay Weng $10,000 in attorney fees and costs as a sanction under section 128.5.

We reverse because section 128.5's plain language only authorizes a trial court to order a party, the party's attorney, or both to pay sanctions to "another party" based on bad faith actions or tactics. The statute does not authorize a trial court to award a party sanctions against its own attorney or former attorney. The trial court therefore exceeded its authority in awarding Weng sanctions against Holzer under section 128.5.

I

FACTS AND PROCEDURAL HISTORY

Holzer is an attorney who represented Weng in the underlying case for approximately two years. On October 28, 2014, roughly four months before trial, Weng sent Holzer a letter terminating his representation and instructing Holzer to immediately stop all work and transfer his files to Weng's new counsel, WHGC, P.L.C. On November 12, 2014, Weng filed a substitution of attorney form showing WHGC replaced Holzer as its attorney of record.

During the remainder of October and much of November 2014, Holzer and WHGC exchanged numerous communications about transferring the files Holzer created while representing Weng. WHGC repeatedly insisted that Holzer immediately provide

---

[1] All statutory references are to the Code of Civil Procedure.

these files and identify any pending deadlines. Holzer acknowledged his obligation to transfer the files, but explained he would not transfer them until he had an opportunity to review the files and remove his work product. He further explained he was a busy solo practitioner and would conduct the review when he had the opportunity. As the tension between the two continued to escalate, Holzer eventually agreed to transfer the files by Friday, November 28, 2014, the day after Thanksgiving.

On November 21, 2014, Weng applied ex parte for an order compelling Holzer to immediately turn over his files regarding this litigation. The trial court granted the application and ordered Holzer to turn over the files "no later than Friday, November 28, 2014." That same day, Holzer sent a letter placing several conditions on the file transfer, including that it occur at his office at 6:00 a.m.

Based on this letter and other conversations with Holzer, Weng brought a second ex parte application asking the court to modify its earlier order and require Holzer to produce the files to the court no later than Wednesday, November 26, 2014. The court denied that request, but issued a new order requiring Holzer to have Weng's "legal file . . . delivered or ready for pickup on Monday, [December 1, 2014], and to pay the costs for transportation of the legal file."

Holzer provided WHGC with what he claims was Weng's entire file on November 26, 2014. WHGC, however, contends substantial portions of the file were missing, forcing it to spend considerable time and money to obtain a complete copy of the file from the opposing counsel in the underlying case.[2]

On January 8, 2015, Weng filed a noticed motion under section 128.5 seeking "at least $10,000 in attorney[] fees and costs" from Holzer as a sanction based on

---

[2]     The foregoing summary only briefly describes the underlying facts. The parties go into considerably more detail. Those details, however, are irrelevant based on our conclusion section 128.5 did not authorize the trial court to award Weng sanctions against its former attorney, Holzer.

3

his delay in turning over the file and failure to provide a complete file. According to Weng, it incurred at least that amount in attempting to obtain the file from Holzer and eventually obtaining a complete copy from the opposing counsel. Holzer opposed the motion, arguing section 128.5 did not authorize an award of sanctions to a party against its former attorney, the statute did not apply to Holzer because he was not a party or an attorney of record at the time of the alleged conduct giving rise to the sanctions request, Weng failed to present evidence showing it incurred fees in the amount requested, and section 128.5 could not be retroactively applied to the alleged conduct, which occurred before the statute's January 1, 2015 effective date.

After taking the matter under submission, the trial court issued a minute order granting the motion: "Case law supports the award of attorney fees against prior counsel based on the facts presented in this motion. The Court awards attorney fees and costs to Weng . . . and against Attorney Peter Holzer in the amount of $10,000, payable within 90 days." This appeal followed.

II

DISCUSSION

A.    *Standard of Review*

We generally review a section 128.5 sanctions award for abuse of discretion. (*Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 893.) "'"'The abuse of discretion standard . . . measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria. 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action. . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.'" [Citation.] [¶] "[W]hen a trial court's decision

4

rests on an error of law, that decision is an abuse of discretion.""" (*Catalina Island Yacht Club v. Superior Court* (2015) 242 Cal.App.4th 1116, 1124.)

"[W]here a question of statutory construction is presented in the course of the review of a discretionary decision, such issues are legal matters subject to de novo review." (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921-922 [interpretation of section 128.7 to determine whether court could award sanctions on facts presented was a question of law subject to independent review].)

B.     *The Trial Court Abused Its Discretion by Exceeding Its Authority Under Section 128.5*

Holzer contends the trial court abused its discretion in awarding Weng sanctions under section 128.5 because that statute does not grant trial courts the authority to award sanctions against the moving party's own attorney. We agree.

"'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.'" (*Whitney v. Montegut* (2014) 222 Cal.App.4th 906, 911-912.)

Section 128.5 authorizes a sanctions award as follows: "A trial court may order a party, the party's attorney, or both to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."[3] (§ 128.5, subd. (a).)

---

[3]     Section 128.5 was first enacted in 1981. In 1994, the Legislature amended the statute to limit it to lawsuits filed on or before December 31, 1994. At the same time, the Legislature enacted section 128.7 to authorize sanctions for an improper filing that a party refused to withdraw, rather than for the bad faith actions or tactics described in section 128.5. (*Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 809-810.) In 2014, the Legislature amended section 128.5 to eliminate the December 31, 1994 time limit and make the statute applicable to lawsuits filed after that date. (Stats. 2014,

The plain meaning of this language authorizes a trial court to order a party, its attorney, or both to pay the reasonable expenses incurred by another party; it says nothing about ordering an attorney to pay as sanctions any expenses incurred by the attorney's own client. (*Rabbitt v. Vincente* (1987) 195 Cal.App.3d 170, 174-175 (*Rabbitt*); see *In re Marriage of Laursen & Fogarty* (1988) 197 Cal.App.3d 1082, 1088 (*Laursen*) ["This section only contemplates ordering payment of expenses incurred by another party or the party's attorney [citation], not ordering sanctions for expenses incurred by an attorney's own client"].)

In *Rabbitt*, a client represented by an attorney joined with another plaintiff to bring a personal injury lawsuit. The attorney settled the client's case and dismissed the client's claims. The lawsuit proceeded on the other plaintiff's claims and the defendant served the client with a deposition subpoena. The client forwarded the subpoena to the attorney, who told the client the deposition would be continued and she did not need to appear on the designated date. The deposition, however, went forward on that date and the defendant then served the client with an order to show cause regarding contempt based on the client's failure to appear. The client retained a new attorney and opposed the order to show cause based on the former attorney's instructions not to appear. The client's opposition also sought sanctions against her former attorney because of those instructions. Based on a referee's recommendation, the trial court denied the order to show cause and awarded the client sanctions against her former attorney under section 128.5. (*Rabbitt*, *supra*, 195 Cal.App.3d at pp. 172-173.)

The Court of Appeal reversed, concluding the sanctions award "exceed[ed] section 128.5's] jurisdictional scope." (*Rabbitt*, *supra*, 195 Cal.App.3d at p. 175.) The

---

ch. 425, § 1.) The amended statute went into effect on January 1, 2015, but does not specify whether it applies to all actions pending at that time or only to conduct occurring after that date. (Legis. Counsel's Dig., Assem. Bill No. 2494 (2013-2014 Reg. Sess.), 2 Stats. 2014, ch. 425.)

*Rabbitt* court explained, "[T]he statute does not contemplate the imposition of sanctions against an attorney in favor of that attorney's own client. Instead, section 128.5 enables a trial court to impose sanctions against an attorney, a client/party, or both, and in favor of another, opposing party to pay reasonable expenses, including attorney[] fees, which another, opposing party incurs because of frivolous or dilatory bad-faith actions or tactics. [¶] Cases imposing section 128.5 sanctions do so only against a party or a party's attorney, and in favor of an opposing party or an opposing party's attorney. [Citations.] Section 128.5 does not give trial courts the power to adjudicate attorney-client disputes . . . ." (*Rabbitt*, at pp. 174-175.)

Here, *Rabbitt* compels the conclusion the trial court abused its discretion because it exceeded its authority under section 128.5. Holzer served as Weng's attorney in this action until Weng substituted WHGC as its new counsel. Within the meaning of section 128.5, Weng therefore is not "another party" in relation to Holzer, and may not recover sanctions against him under the statute. Absent statutory authority, trial courts have no inherent power to award attorney fees as sanctions for alleged misconduct. (*Bauguess v. Paine* (1978) 22 Cal.3d 626, 638-639; *Interstate Specialty Marketing, Inc. v. ICRA Sapphire, Inc.* (2013) 217 Cal.App.4th 708, 717.) Neither Weng nor the trial court cited any statutory authority other than section 128.5 to justify the sanctions award.

Weng contends *Rabbitt* does not apply here because "the person who filed the motion for an award of sanctions [in *Rabbitt*] was not a party to the action, and thus the attorney who represented the person was never an attorney of record." Weng misconstrues *Rabbitt*. Although the client who sought sanctions in *Rabbitt* no longer was a party to the action when the attorney's alleged misconduct occurred, the client previously was a party to the action and the opinion makes clear the attorney against whom sanctions were sought "represented [the client] as her attorney in that underlying suit." (*Rabbitt*, *supra*, 195 Cal.App.3d at p. 172.) More importantly, although the *Rabbitt* court acknowledged the client no longer was a party at the time the conduct

7

occurred, the critical factor leading to the court's conclusion section 128.5 did not apply was that the client sought sanctions against her own attorney:  "In the case at bench, . . . [the client] was not a party, having settled out of the underlying suit before her deposition.  *In any case*, the statute does not contemplate the imposition of sanctions against an attorney in favor of that attorney's own client."  (*Rabbitt*, at p. 174, italics added; see *Laursen*, *supra*, 197 Cal.App.3d at p. 1088.)

Weng also contends *Laursen* does not apply because it involved a trial court order directing "an attorney to pay $2,000 into a trust fund for the attorney's former client to use to retain new counsel," and that "[is] not the case here."  Whether the facts in this case are similar to the facts in *Laursen* misses the point:  *Laursen* interpreted *Rabbitt* as establishing the rule that section 128.5 "only contemplates ordering payment of expenses incurred by another party or the party's attorney . . . not ordering sanctions for expenses incurred by an attorney's own client."  (*Laursen*, *supra*, 197 Cal.App.3d at p. 1088.)

Our conclusion section 128.5's plain language did not authorize the trial court to award Weng sanctions against its former attorney, Holzer, eliminates the need to address Holzer's other challenges to the award, including that the trial court applied the statute retroactively to conduct occurring before its effective date, the court failed to make a written order reciting in detail the conduct or circumstances justifying the award as required by section 128.5, subdivision (c), and Weng failed to present evidence showing it incurred fees in the amount requested.

Finally, we emphasize our conclusion the trial court lacked authority to make its sanctions award under section 128.5 does not necessarily leave Weng without a remedy for any injury it allegedly sustained because of Holzer's conduct.  California Rules of Professional Conduct rule 3-700(D)(1) provides that an attorney whose employment has terminated shall "promptly release to the client" all of the client's papers and property, which "includes correspondence, pleadings, deposition transcripts, exhibits,

8

physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not."  An attorney is subject to discipline if he or she fails to promptly release a file to a client.  (*Bernstein v. State Bar* (1990) 50 Cal.3d 221, 232; *Rosenthal v. State Bar* (1987) 43 Cal.3d 612, 621-622.)  Moreover, where failure to return a client's file results in damages to the client, the attorney may incur civil liability for malpractice.  (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2015) ¶ 10:333.2, pp. 10-46 to 10-47.)  We express no opinion on whether Holzer breached his duty under rule 3-700(D)(1) or any other duty he owed Weng.

III

DISPOSITION

The order is reversed.  Holzer shall recover his costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.

9